Joni Lynn (Rodenbarger) COCHRAN,
Appellant–Petitioner,

v.

Scott RODENBARGER, Appellee–
Respondent.

No. 29A02–0004–CV–272.

Court of Appeals of Indiana.

Oct. 27, 2000.

Victoria Ursulskis, Indianapolis, Indiana, Sharon B. Slack, Carmel, Indiana, Attorneys for Appellant.

Gary M. Selig, Burton & Cork, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

SHARPNACK, Chief Judge

Joni L. Cochran ("Mother") appeals the trial court's order in favor of Scott Rodenbarger ("Father"), which found that the parties' settlement agreement provided that child support was to be a variable amount, going up or down depending upon Mother's income, and that Mother was $44,606.00 in arrears in child support. Mother raises one issue, which we expand and restate as:

1) whether the trial court erred in determining that the parties' settlement agreement provided that child support was to be a variable amount, going up or down depending upon Mother's income;

2) whether a self-adjusting child support provision based solely on the income of the noncustodial parent is void; and

3) whether the evidence is sufficient to support the trial court's finding that Mother is $44,606.00 in arrears.

We affirm.

The relevant facts follow. On September 8, 1989, Mother and Father were divorced. Pursuant to the divorce decree, which incorporated the parties' settlement agreement, Father was granted custody of the couple's five year old child, J.R. With respect to the issue of child support, the pertinent part of the agreement is as follows:

7. [Mother] having now terminated her employment shall pay no support for the minor child until such time as she has graduated from her undergraduate studies, or ceases to attend, or make reasonable progress towards attaining a college degree. Upon full time employment, [Mother] will commence to pay sixteen (16%) percent of gross wages for the support of the minor child, within ninety (90) days subsequent to graduation from college or termination as set forth above. [Mother] shall notify [Father] within thirty (30) days of the termination of her college education or reemployment on a full-time basis.

Record, p. 24.

When Mother graduated from college in 1994, she began working part-time and made eight child support payments in the amount of $85.00 a month. Thereafter, Mother obtained full-time employment and began paying child support in the amount of $300.00 a month, an amount that equaled sixteen percent of her gross income at that time. Although Mother has received pay increases since that time, she has continued to make child support payments in the amount of $300.00 per month.

On November 3, 1999, Father filed a motion with the trial court entitled "Verified Petition for Modification of Decree, Rule to Show Cause, and for Hearing." Record, p. 33. In the motion, Father alleged that Mother had refused to pay "child support in the amount as required by the [divorce] Decree" and asked the trial court to find Mother in contempt of court. Record, p. 35. Following a hearing, the trial court found that the "Sixteen Percent (16%) of gross income identified . . . [in the parties'] Settlement Agreement . . . was to be a variable amount, going up or down depending upon [Mother's] income." Record, p. 52. Consequently, the trial court found that Mother was $44,606.00 in arrears in child support. However, because "[i]t [was] understanda-

ble as to why [Mother] misunderstood the prior order and did not pay the proper amount of support," it refused to find Mother in contempt of court. Record, p. 52.

■ Where, as here, the trial court enters findings of fact and conclusions of law on its own motion, the specific findings control only as to the issues they cover, and the general judgment controls as to the issues upon which the court has not made findings. *Wagner v. Grant County Dept. of Pub. Welfare,* 653 N.E.2d 531, 532 (Ind.Ct.App.1995). Thus, the specific findings will not be set aside unless they are clearly erroneous and we will affirm the general judgment on any legal theory supported by the evidence. *Id.* A finding is clearly erroneous when there are no facts or inferences drawn therefrom which support it. *Adams v. Marion County Office of Family & Children,* 659 N.E.2d 202, 204 (Ind.Ct.App.1995). In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Rather, we consider only the evidence and reasonable inferences drawn therefrom which support the verdict. *Id.*

## I.

■ The first issue is whether the trial court erred in determining that the parties' settlement agreement provided that child support was to be a variable amount, going up or down depending upon Mother's income. Settlement agreements entered into attendant to dissolution proceedings are contractual in nature. *DeBoer v. DeBoer,* 669 N.E.2d 415, 420 (Ind. Ct.App.1996), *trans. denied.* As such, the intention of the parties, as expressed by the clear language of the settlement agreement, controls. *In re Marriage of Loeb,* 614 N.E.2d 954, 957 (Ind.Ct.App.1993). Where, as here, the language of the settlement agreement is unambiguous, the con-

struction of the agreement is a question of law for the courts. *Id.*

■ The portion of the settlement agreement at issue in the present case is as follows: " Upon full time employment, [Mother] will commence to pay sixteen (16%) percent of gross wages for the support of the minor child, within ninety (90) days subsequent to graduation. . . ." Record, p. 24. The plain language of this clause requires Mother to pay child support in an amount equal to 16% of her gross income. Accordingly, in the event that Mother's gross income increases, her child support obligation would increase. Likewise, if Mother's gross income were to decrease, her child support obligation would decrease. Although Mother argues that the language in this clause merely set the formula to determine her child support obligation when it arose initially, we disagree. The clause contains no such limitation: it does not provide that Mother will pay 16% of her gross wages from her first full-time job. Rather, it simply instructs Mother to pay 16% of her gross wages, whatever that amount may be. Consequently, we agree with the trial court's conclusion that the plain language of the settlement agreement provides that Mother's child support obligation is a variable amount, going up or down depending upon her income.[1] *See, e.g., Loeb,* 614 N.E.2d at 957.

## II.

The second issue is whether a self-adjusting child support provision based solely on the income of the noncustodial parent is void. Mother argues that the trial court erred in its interpretation of the portion of the settlement agreement pertaining to child support because its construction created a self-adjusting escalator clause, which is "in indisputable contravention of law existing at the time of the [divorce] Decree (1989) and at the time of the court's decision (2000) and [is] in indisputable contravention of Indiana's public policy

---

1. Due to our resolution of this issue, we need not address Mother's contention that the trial court's order had the effect of impermissibly modifying the support order retroactively.

with regard to factors driving a child-support determination." Appellant's Brief, p. 13. Mother relies primarily on this court's opinion in *Hunter* in support of her argument. *Hunter v. Hunter*, 498 N.E.2d 1278 (Ind.Ct.App.1986).

In *Hunter*, the noncustodial parent was an insurance salesman whose income fluctuated greatly. *Id.* at 1281. In an effort to address the problem presented by the noncustodial parent's uncertain and erratic income, the trial court ordered the noncustodial parent to pay child support in the amount of $50.00 per week plus 25% of his net wages over $205.00 per week, for a total amount not to exceed a total of $92.50 per week. *Id.* at 1280. On appeal, this court held that the trial court abused its discretion in ordering a self-adjusting escalating child support payment, noting that the "automatic increase and decrease of the amount of child support based upon the single criterion of non-custodial parent income is improper." *Id.* at 1286. The holding in *Hunter* was based on the fact that the order (1) did not give due regard to the actual needs of the child; (2) did not consider the non-custodial parent's financial means in relation to the other factors required to be considered under the applicable statute; (3) did not provide the needed stability to ensure that the child's needs were met consistently from week to week; and (4) might cause administrative and enforcement problems or encourage animosity and additional litigation by the parties because the parties did not request or agree to the order fashioned by the court. *Id.* at 1289.

In addition to the provision regarding child support in the present case being vastly different from the child support provision ordered in *Hunter*, *Hunter* is readily distinguishable because it was the trial court, not the parties as it was here, that fashioned the child support order. The *Hunter* court noted the significance of this distinction and specifically stated that its holding did not extend to those situations where the child support order was based upon mutual agreement of the parties:

> If the dissolution parties, with a spirit of fairness and concern for their children, stipulate to a percentage of income or other escalating child support obligation by the non-custodial parent, the risks of yearly resistance to increased support and the attendant animosity and legal expense may be diminished. We express no opinion as to the validity or enforceability of such a child support order when based upon mutual agreement of the parties.

*Id.*

Thus, the trial court's interpretation of the child support provision in the settlement agreement in this case is not contrary to case law as suggested by Mother. Moreover, we do not find that the trial court's construction of the settlement agreement is "in indisputable contravention of ... public policy...." Appellant's Brief, p. 13. Both parties agreed to the child support provision. It is well settled that parties may agree to provisions that a court would otherwise be without authority to order. *See, e.g., Loeb*, 614 N.E.2d at 957. Moreover, both parties were able to return to court for a modification of the support order. *See* Ind.Code § 31–16–8–1. Although we recognize that in light of the adoption of the Indiana child support guidelines,[2] a trial court today would be unlikely to approve a provision such as the one at hand, we nevertheless cannot conclude as a matter of law that a self-adjusting support provision based on only the noncustodial parent's income, which was agreed to by both parties, is invalid as against public policy. *See, e.g., In re Marriage of Ferguson*, 519 N.E.2d 735, 738–739 (Ind.Ct.App.1988).

### III.

The third issue is whether the evidence is sufficient to support the trial court's

---

2. The child support provision in the instant case was approved and incorporated into the parties' divorce decree less than one month prior to the adoption of the Indiana child support guidelines.

finding that Mother is $44,606.00 in arrears. At the hearing, Father, referencing Respondent's Exhibit A, testified that Mother owed $44,606.35 in back child support. This calculation was based on 16% of Mother's earnings from 1995 through 1999 minus the amount of child support that Mother paid. Respondent's Exhibit A, upon which Father relied for his testimony, was never admitted into evidence.

Mother argues that because Father never introduced Exhibit A into evidence, it could not be considered by the trial court. Without that exhibit, the only evidence that is left with respect to the amount of arrearage owed is Father's testimony, which Mother alleges is insufficient to support the finding of the trial court. In response, Father argues that his testimony alone is sufficient to support the trial court's finding.

We agree that Exhibit A, which was never admitted into evidence, cannot be considered. *See, e.g., Harris v. Primus,* 450 N.E.2d 80, 83 (Ind.Ct.App. 1983) (noting that all evidence must be admitted into evidence in order to be considered). Therefore, the issue is whether Father's testimony by itself is sufficient to support the trial court's finding that Mother owes $44,606.00 in child support arrearage.

In *Hoehn,* the mother testified at a hearing on child support modification that while she did not know exactly how much the father earned, she estimated his annual income to be over $100,000.00. *Hoehn v. Hoehn,* 716 N.E.2d 479, 484 (Ind.Ct. App.1999). The father did not appear at the hearing or provide any evidence regarding his income. *Id.* In upholding the trial court's calculation of the father's modified support obligation, we stated, "In the absence of any evidence from [the father], we cannot say the trial court abused its discretion when it modified the child support order based upon its finding that [the father] earned over $100,000 per year." *Id.* at 484–485.

Like *Hoehn,* the only evidence presented in this case regarding the amount of arrearage due came from the custodial parent. Although Mother was present at the hearing, she did not present any evidence nor did she object to Father's testimony on this point. Mother attempts to distinguish *Hoehn* based on the fact that *Hoehn* involved a child support modification hearing, "which does not focus on precision as much as an arrearage case would." Reply Brief, p. 13. Mother does not cite any authority for this proposition, however, and has thus waived this argument. *See* Ind. Appellate Rule 8.3(A)(7); *Krasowski v. Krasowski,* 691 N.E.2d 469, 473 (Ind.Ct.App.1998).

Mother further argues that *Hoehn* is distinguishable because the holding in that case was based in large part on the fact that the father did not file a child support worksheet and that failure to do so prevents a party from challenging the income figures arrived at by the trial court. While we acknowledge that the instant case does not involve a child support worksheet as in *Hoehn,* we do not find that distinction controlling. The crux of the holding in *Hoehn* was that the trial court did not abuse its discretion in finding that the father earned over $100,000 per year based on the mother's testimony given the absence of any evidence from the father to the contrary. *Hoehn,* 716 N.E.2d at 484–485. Therefore, because there is evidence in the record, albeit only from Father, that Mother's arrearage totaled $44,606.35, we cannot say that the trial court's finding that Mother is $44,606.00 in arrears is clearly erroneous. *See id.; Adams,* 659 N.E.2d at 204.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

BAKER, J. and VAIDIK, J. concur.