**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 06 2013, 5:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**BRYAN LEE CIYOU**
**LORI B. SCHMELTZER**
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**ERIC J. BENNER**
**LAURIE D. JOHNSON**
Richards, Boje, Pickering, Benner & Becker
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE GUARDIANSHIP OF: | ) ) ) | |
| M.A.M.J., a minor; | ) ) | |
| DIANA SULLIVAN, | ) ) | |
| Appellant, | ) ) | |
| vs. | ) ) | No.  29A02-1208-GU-664 |
| KATHERINE ASHLEY OLIVER, | ) ) | |
| Appellee. | ) | |

**APPEAL FROM THE HAMILTON SUPERIOR COURT**
The Honorable Judith S. Proffitt, Senior Judge
Cause No. 29D01-1205-GU-67

**August 6, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

D.S. ("Grandmother") appeals the trial court's order appointing K.O. ("Guardian") as permanent guardian over M.J.'s ("Child") person and estate.

We affirm.

ISSUES

1. Whether the trial court lacked jurisdiction over the guardianship proceeding.

2. Whether Guardian improperly served notice in the guardianship proceeding.

3. Whether the trial court erred by appointing Guardian, instead of Grandmother, as permanent guardian over Child.

FACTS

Child was born in September 2007 in Hamilton County, Indiana to J.S. ("Mother")[1] and K.J. ("Father"). Mother was a friend of Guardian, who lived in Hamilton County. Guardian and Mother have been friends since 2005, and Guardian has been "close" to Child since her birth. (Tr. 41). Mother has struggled with drug usage and addiction, resulting in sporadic incarceration. Guardian "made a commitment" to Mother that she "would always be there" for Mother. (Tr. 9). Guardian let Mother live in her house at various times and helped to care for Child.

---

[1] Mother also had another child, K.H., born in July 2011, from another relationship.

2

Sometime in 2010, Mother and Child moved to Wisconsin, where Grandmother lived. Sometime thereafter, Child moved to Tennessee and lived with Father. In the summer of 2011, Grandmother drove to Tennessee and took Child from Father's care, telling him that she would later return Child. Grandmother took Child back to Wisconsin to Mother and never returned her to Father.

In January 2012, Mother was incarcerated in Wisconsin on a probation violation and asked Guardian to take care and custody of Child, who was then four and one-half years old.[2] Mother provided a handwritten authorization for Guardian to have custody of Child and medical authorization over Child. Additionally, Mother signed a notarized Wisconsin form entitled "Power of Attorney Delegating Parental Power"[3] and gave Guardian "[f]ull parental power regarding the care and custody" of Child.[4] (Guardian's Ex. 3 at 1). Guardian drove to Wisconsin and transported Child back to Indiana.[5]

Guardian, who lived with her fiancé and toddler daughter, welcomed Child into her home as part of her family. Guardian provided food, shelter, clothing, and medical coverage for Child and enrolled her in an educational daycare. Guardian invited

---

[2] At that time, Father was incarcerated in Tennessee.

[3] The power of attorney form provided that the form could only be used by a parent who had legal custody of the child and that it could not be used to delegate parental power to another if the child was subject to the jurisdiction of a juvenile court.

[4] Mother also named Guardian as power of attorney and gave Guardian parental power over Mother's infant son, K.H.

[5] Initially, Guardian also took K.H. to her home in Indiana. K.H. was later placed with Safe Family in Hamilton County, Indiana. Arrangements were then made for K.H.'s return to Mother in Wisconsin upon her release from jail in April 2012, and Grandmother transported K.H. from Indiana to Wisconsin. However, one week after Mother's release jail, she violated probation, fled from authorities in Wisconsin, and left K.H. in Grandmother's care. Guardianship of K.H., who lives in Wisconsin and has been placed in Grandmother's care pursuant to a Wisconsin trial court's order in a child in need of services proceeding, is not at issue in this appeal.

3

Grandmother to come to Indiana to visit Child and stay at Guardian's home. Grandmother visited Child on three occasions. Guardian allowed Grandmother to take Child for an out-of-state visit because Grandmother said she was taking Child to Illinois to visit family. Grandmother then ended up taking Child to Wisconsin without notifying Guardian. Grandmother, however, returned Child to Guardian.

Mother was released from jail in April 2012 but then fled Wisconsin after she violated probation. On May 2, 2012, Guardian filed a petition to be appointed guardian over Child's person and estate. This case was filed under cause number 29D01-1205-GU-67 ("Cause 67"). In Guardian's petition, she asserted that an emergency existed and asked the trial court to appoint her as the temporary guardian of Child and to set a hearing for a permanent guardianship. Guardian also alleged that Mother's whereabouts were unknown and that Father was incarcerated in Tennessee, and she requested notice by publication for the permanent guardianship hearing. That same day, the trial court appointed Guardian as temporary guardian over Child and set a hearing for the appointment of a permanent guardian over Child for July 2012. Additionally, the trial court ordered that notice to Mother and Father of the guardianship petition and hearing be published in *The Noblesville Times*.

On May 4, 2012, Grandmother filed petition for guardianship over Child's person and estate under cause number 29D01-1205-GU-68 ("Cause 68"). In her petition, Grandmother asserted that Child's residence was Indiana. Grandmother also alleged that Mother's whereabouts were unknown and that Father was incarcerated in Tennessee.

4

Grandmother later requested that the trial court allow her to serve notice to Mother by publication, and Grandmother then published notice in *The Noblesville Times*.

Guardian filed a motion to dismiss Cause 68, asserting that the same action for a guardianship over Child was pending in Cause 67. Thereafter, Grandmother intervened in Cause 67 and filed an objection to Guardian's petition for guardianship. Grandmother also filed a petition for visitation.

Prior to the guardianship hearing, Mother gave written consent to have Guardian appointed as permanent guardian of Child. In her consent, Mother "join[ed]" in Guardian's petition and waived any hearing on Guardian's guardianship petition. (App. 16). This consent was filed with the trial court in Cause 67.

On July 18, 2012, the trial court consolidated Cause 68 into Cause 67 and then dismissed Cause 68. That same day, the trial court held a guardianship hearing to determine whether Guardian or Grandmother would be appointed as permanent guardian of Child. Guardian testified that she had spoken to Father, who indicated that he was not currently in a position to provide care or a stable home for Child and that he knew that Child was in "the best place" with Guardian. (Tr. 21). During the hearing, Mother, who had an outstanding warrant for her arrest out of Wisconsin, appeared at the hearing to offer testimony in support of Guardian's petition for permanent guardianship of Child. Mother testified that she wanted Guardian to be guardian of Child because Guardian had been close to Child since her birth and was able to provide a stable environment for Child. Mother testified that living with Guardian was "the perfect environment" for Child and that she had "never seen [Child] that happy." (Tr. 47). Mother also testified

5

that she "didn't think it would be appropriate" for Grandmother to be appointed as Child's guardian because she could not provide for Child as Guardian could. (Tr. 42). Mother testified that when she was thirteen years old, she was removed from Grandmother's home and had spent time in a foster home and on house arrest. Mother also testified that when she was sixteen years old, she went to live with her aunt and uncle who were appointed as her guardians. Following Mother's testimony, she voluntarily gave herself up to authorities. Grandmother testified on her own behalf in support of her own guardianship petition. During the hearing, Grandmother made no objection or argument alleging that the trial court lacked jurisdiction.

At the end of the guardianship hearing, the trial court granted Guardian's petition, denied Grandmother's petition, and appointed Guardian as the permanent guardian over Child's person and estate.[6] Grandmother now appeals.

DECISION

Grandmother argues that the trial court abused its discretion by granting Guardian's petition for permanent guardianship of Child and denying Grandmother's permanent guardianship petition. Specifically, Grandmother contends that the trial court erred by entering the guardianship order because: (1) the trial court lacked personal and subject matter jurisdiction; (2) Guardian's notice of the guardianship proceeding was improper; and (3) the trial court erred by choosing Guardian to be Child's guardian instead of Grandmother.

---

[6] The trial court also ordered Guardian to "provide reasonable visitation" to Grandmother and specified that that visitation would occur within the State of Indiana. (App. 8). Grandmother does not appeal the trial court's order regarding visitation.

6

Before we address each argument, we note that "[a]ll findings and order of the trial court in guardianship proceedings are within its discretion." *In re Guardianship of Hollenga*, 852 N.E.2d 933, 936 (Ind. Ct. App. 2006) (citing Ind. Code § 29–3–2–4). Therefore, we will review the trial court's order for an abuse of discretion. *Hollenga*, 852 N.E.2d at 937. An abuse of discretion occurs only when the decision of the trial court is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* In addition, we will give due regard to the trial court's ability to assess the credibility of witnesses. *In re Guardianship of J.K.*, 862 N.E.2d 686, 691 (Ind. Ct. App. 2007). We will not reweigh the evidence; instead, we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id.*

1. Jurisdiction

For the first time on appeal, Grandmother argues that the trial court lacked jurisdiction to enter an order appointing a guardian over Child. Specifically, Grandmother asserts that the trial court lacked personal jurisdiction over Child and subject matter jurisdiction over the guardianship proceeding because Child was a resident of Wisconsin. Grandmother contends that, as a result of the trial court's lack of jurisdiction, its order appointing Guardian as guardian over Child was "void ab initio."[7] (Grandmother's Br. 25).

---

[7] *Void ab initio* is defined as "[n]ull from the beginning[.]" BLACK'S LAW DICTIONARY 1604 (8th ed. 2004).

7

Our Indiana Supreme Court has held that Indiana trial courts possess two kinds of jurisdiction. *K.S. v. State*, 849 N.E.2d 538, 540 (Ind. 2006).[8] "Subject matter jurisdiction exists when the Indiana Constitution or a statute grants the court the power to hear and decide cases of the general class to which any particular proceeding belongs." *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 457 (Ind. 2012) (citing *K.S.*, 849 N.E.2d at 540; *Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505 (Ind. 2005)). "When a court lacks subject matter jurisdiction, its actions are *void ab initio* and have no effect whatsoever." *Parkview Hosp., Inc. v. Geico Gen. Ins. Co.*, 977 N.E.2d 369, 371-72 (Ind. Ct. App. 2012) (citing *Allen v. Proksch*, 832 N.E.2d 1080, 1095 (Ind. Ct. App. 2005)), *trans. denied*. "Personal jurisdiction requires that appropriate process be effected over the parties." *K.S.*, 849 N.E.2d at 540. The Supreme Court has explained that "[o]ther phrases recently common to Indiana practice, like 'jurisdiction over a particular case,' confuse actual jurisdiction with legal error, and we will be better off ceasing such characterizations." *Id.* "The fact that a trial court may have erred along the course of adjudicating a dispute does not mean it lacked jurisdiction." *Id.* at 541.

Grandmother makes no challenge to the trial court's personal jurisdiction over her. Instead, Grandmother contends that the trial court's judgment was void because the trial court lacked personal jurisdiction over Child. However, Grandmother fails to acknowledge that she did not raise an objection to the trial court's jurisdiction over Child at any time during the guardianship proceeding. Grandmother also ignores the fact that she filed her own guardianship petition in this Indiana trial court, claiming that Child

---

[8] Grandmother cites to three types of jurisdiction, including jurisdiction over a particular case as a third type. As explained below, our Indiana Supreme Court has clarified that this is improper.

resided in Indiana and asking the trial court to enter an order regarding guardianship over Child. Indeed, the trial court's order that she is now appealing was entered on Guardian's and Grandmother's competing guardianship petitions. To the extent that Grandmother now attempts to challenge the trial court's personal jurisdiction over Child, we conclude that she has waived any such review. *See State v. Omega Painting, Inc.*, 463 N.E.2d 287, 291 (Ind. Ct. App. 1984) (explaining that "in order to preserve the question of personal jurisdiction, the issue must be timely raised either by a motion pursuant to Indiana Trial Rule 12(B)(2) or in the answer" and the "[f]ailure to so preserve the question will result in its waiver on appeal"), *reh'g denied*; *Batterman v. Bender*, 809 N.E.2d 410, 412 (Ind. Ct. App. 2004) (holding that "a party may not take advantage of an error that [s]he commits, invites, or which is the natural consequence of [her] own neglect or misconduct" and that such invited error is not subject to appellate review).

Grandmother also asserts the trial court lacked subject matter jurisdiction over the guardianship proceeding. Although Grandmother did not raise this issue below, subject matter jurisdiction cannot be waived and can be raised at any time. *Parkview Hosp.*, 977 N.E.2d at 372.

The jurisdiction of Indiana courts to hear guardianship actions is set forth by the guardianship statutes. Specifically, Indiana Code § 29–3–2–1 provides that Indiana trial courts have jurisdiction of "[t]he business affairs, physical person, and property of every incapacitated person and minor *residing* in Indiana." I.C. § 29–3–2–1(a)(1) (emphasis added). Indiana Code § 29–3–2–5 provides that "[t]he residence of a person shall be determined by *actual presence* rather than technical domicile." (Emphasis added).

9

Here, the record is clear that Child was residing and actually present in Indiana when Guardian filed her guardianship petition. In January 2012, Mother named Guardian as her power of attorney for the care and custody of Child. From that time until May 2012, when Guardian filed her guardianship petition, Child was residing in Indiana with Guardian. Indeed, Grandmother's own guardianship petition—which she filed in Indiana—alleged that Child was residing in Indiana. Therefore, the trial court had subject matter jurisdiction under the guardianship statute. *Cf. In re Guardianship of M.E.T.*, 888 N.E.2d 197, 199 (Ind. Ct. App. 2008) (holding that the trial court did not have subject matter jurisdiction under the guardianship statute where incapacitated person was not actually present or residing in Indiana at the time the guardianship petition was filed); *In re Guardianship of C.M.W.*, 755 N.E.2d 644, 647 (Ind. Ct. App. 2001) (explaining that the trial court did not have subject matter jurisdiction under the guardianship statute where minor was not actually present or residing in Indiana).

Nevertheless, Grandmother asserts that the Uniform Code Custody Jurisdiction Act ("UCCJA") should apply to this guardianship proceeding and that the trial court lacked subject matter jurisdiction under the UCCJA because Child was a resident of Wisconsin. Stated differently, Grandmother argues that the trial court erred because it failed to determine if it had jurisdiction under the UCCJA statutes.[9]

Our Indiana Supreme Court has explained that "[t]he jurisdictional limitations imposed by the UCCJA are not equivalent to declarations of subject matter jurisdiction, but rather are refinements of the ancillary capacity of a trial court to exercise authority

---

[9] Grandmother cites to Indiana Code § 31-17-3-3, which is a UCCJA statute that was repealed and recodified under Indiana Code article 31-21 effective July 1, 2007.

over a particular case" and that "[t]his exercise of authority is waivable." *Williams v. Williams*, 555 N.E.2d 142, 145 (Ind. 1990). *See also In re Custody of A.N.W.*, 798 N.E.2d 556, 560 (Ind. Ct. App. 2003), *trans. denied*. More recently, the Indiana Supreme Court has clarified that "jurisdiction over a particular case" is a "misnomer" and is really legal or procedural error and that it is subject to waiver. *See Packard v. Shoopman*, 852 N.E.2d 927, 930 (Ind. 2006); *K.S.*, 849 N.E.2d at 540, 542.

Here, Grandmother made no objection or argument below that the UCCJA applied to this guardianship proceeding or that trial court lacked jurisdiction under the UCCJA. Thus, Grandmother has waived appellate review of any such argument. *See, e.g.*, *Williams*, 555 N.E.2d at 145; *In re Marriage of Kenda & Pleskovic*, 873 N.E.2d 729, 736 (Ind. Ct. App. 2007) (holding that mother waived the procedural issue of whether the trial court had authority under the UCCJA by failing to timely raise the issue), *trans. denied*. *See also Bergman v. Zempel*, 807 N.E.2d 146, 155 (Ind. Ct. App. 2004) ("We have repeatedly noted jurisdiction under the UCCJA is a question of jurisdiction over the case and, if a party fails to contest a trial court's jurisdiction, the issue can be waived.").[10]

2. Notice

Grandmother concedes that the trial court had personal jurisdiction over her; nevertheless, she contends that the trial court erred in appointing Guardian as permanent guardian because Guardian did not send Grandmother notice and did not comply with the

___

[10] Because of Grandmother's waiver, we will not address and leave for another day the issue of whether the UCCJA is applicable to a guardianship proceeding where custody is not at issue.

11

notice provisions contained in the guardianship statute, Indiana Code § 29-3-6-1, which

provides in relevant part:

> (a) When a petition for appointment of a guardian or for the issuance of a protective order is filed with the court, notice of the petition and the hearing on the petition shall be given by first class postage prepaid mail as follows:
>
> * * * * *
>
> (3) If the subject of the petition is a minor, notice of the petition and the hearing on the petition shall be given to the following persons whose whereabouts can be determined upon reasonable inquiry:
>
> (A) The minor, if at least fourteen (14) years of age, unless the minor has signed the petition.
>
> (B) Any living parent of the minor, unless parental rights have been terminated by a court order.
>
> (C) Any person alleged to have had the principal care and custody of the minor during the sixty (60) days preceding the filing of the petition.
>
> (D) Any other person that the court directs.

Ind. Code § 29-3-6-1.

We need not decide whether Guardian's notice was defective. Under the specific

facts and circumstances before us, Grandmother was not entitled to notice. Grandmother

is not a person listed under the notice statute, and the trial court did not direct for her to

receive notice. Additionally, a review of the record reveals that Grandmother appeared at

the guardianship hearing and never objected to lack of notice prior to this appeal.

Furthermore, the failure to comply with the notice requirements of the permanent

guardianship statute does not automatically invalidate a trial court's appointment of a

permanent guardian. *See Wells v. Guardianship of Wells*, 731 N.E.2d 1047, 1050 (Ind.

Ct. App. 2000) (holding that intervenor in guardianship proceeding was not prejudiced by

alleged failure to comply with notice requirements where the intervenor was present at guardianship hearing), *trans. denied*.[11]

3. Appointment of Permanent Guardian

Grandmother does not dispute that a guardian should have been appointed for Child. Instead, Grandmother argues that the trial court abused its discretion by appointing Guardian as the permanent guardian of Child instead of Grandmother.

Guardianship proceedings and the appointment of a guardian are guided by statute. Indiana Code § 29–3–5–1 sets forth the procedure for filing a guardianship petition and provides that "[a]ny person" may file a petition to be appointed as a guardian over a minor. I.C. § 29-3-5-1(a). Indiana Code § 29-3-5-4, which provides considerations for a trial court's appointment of a guardian, provides:

> The court shall appoint as guardian a qualified person or persons most suitable and willing to serve, having due regard to the following:
>
> (1) Any request made by a person alleged to be an incapacitated person, including designations in a durable power of attorney under IC 30-5-3-4(a).[12]
>
> (2) Any request contained in a will or other written instrument.

---

[11] Grandmother also contends that Guardian's notice to Mother was defective because it was given via publication and not sent via "first class postage prepaid mail" as provided in Indiana Code § 29-3-6-1(a). Additionally, Grandmother argues that, even if publication were a proper method of notice, Guardian's publication notice had procedural defects. Given Grandmother's waiver of the notice issue, and the fact that Mother appeared and participated in the guardianship hearing, we need not address Grandmother's contention that publication was not a proper method of notice. Furthermore, we find Grandmother's argument regarding the impropriety of notice by publication to be disingenuous given the fact that she also served notice to Mother by publication as part of her own guardianship petition in Cause 68.

[12] Indiana Code § 30-5-3-4(a) provides that "[a] principal may nominate a guardian for consideration by the court if protective proceedings for the principal's person or estate are commenced. The court shall make an appointment in accordance with the principal's most recent nomination in a power of attorney except for good cause or disqualification."

13

(3) Any request made by a minor who is at least fourteen (14) years of age.

(4) Any request made by the spouse of the alleged incapacitated person.

(5) The relationship of the proposed guardian to the individual for whom guardianship is sought.

(6) Any person acting for the incapacitated person under a durable power of attorney.

(7) The best interest of the incapacitated person or minor and the property of the incapacitated person or minor.

Ind. Code § 29-3-5-4. Additionally, Indiana Code § 29-3-5-5 sets forth priorities for the

trial court to consider when appointing a guardian:

The following are entitled to consideration for appointment as a guardian under section 4 of this chapter in the order listed:

(1) A person designated in a durable power of attorney.

(2) The spouse of an incapacitated person.

(3) An adult child of an incapacitated person.

(4) A parent of an incapacitated person, or a person nominated by will of a deceased parent of an incapacitated person or by any writing signed by a parent of an incapacitated person and attested to by at least two (2) witnesses.

(5) Any person related to an incapacitated person by blood or marriage with whom the incapacitated person has resided for more than six (6) months before the filing of the petition.

(6) A person nominated by the incapacitated person who is caring for or paying for the care of the incapacitated person.

(b) With respect to persons having equal priority, the court shall select the person it considers best qualified to serve as guardian. The court, acting in

14

the best interest of the incapacitated person or minor, may pass over a person having priority and appoint a person having a lower priority or no priority under this section.

Ind. Code § 29-3-5-5. However, a child's "best interest" is "the overriding factor" that a trial court "must consider when appointing a guardian." *In re Guardianship of A.L.C.*, 902 N.E.2d 343, 355 (Ind. Ct. App. 2009) (citing Ind. Code §§ 29–3–5–4(7), –5(b)).

Grandmother, in an apparent attempt to avoid the apparent priority consideration that Guardian would have under guardianship statutes, argues that we should apply the child in need of services ("CHINS") statutes to this guardianship proceeding. Specifically, Grandmother contends that if Guardian had not picked up Child from Wisconsin when Mother was incarcerated in January 2012, then the Indiana CHINS statutes would have given Grandmother preferential placement for Child. We find Grandmother's argument unpersuasive and decline to apply the CHINS statutes to this guardianship proceeding.

Here, the evidence shows that Mother placed Child in Guardian's care when she first went to jail in January 2012. At that time, Mother, who had legal custody of Child, signed a notarized power of attorney granting Guardian "[f]ull parental power regarding the care and custody" of Child. (Guardian's Ex. 3 at 1). Thus, Guardian was entitled to primary consideration in the trial court decision to appoint a guardian. *See In re Hollenga*, 852 N.E.2d at 938 (holding that, under guardianship statutes, "a person designated in a durable power of attorney is entitled to primary consideration as the person to be appointed as guardian [over an incapacitated person] and *shall* be appointed guardian unless good cause or disqualification is shown"). The record reveals that

15

Guardian had custody and care of Child and provided for her both financially and emotionally. After Guardian filed the guardianship petition, Mother filed a written consent to Guardian being named as permanent guardian of Child and joined in Guardian's petition. Mother also appeared at the guardianship hearing and testified why she wanted Guardian to be appointed as permanent guardian over Child. Additionally, during the guardianship hearing, the trial court heard testimony from witnesses on Guardian's behalf regarding why it would be in Child's best interest to have Guardian appointed as permanent guardian.

In support of her argument that the trial court erred by appointing Guardian as guardian of Child, Grandmother questions the trial court's assessment of witnesses and evidence and asserts that the "trial court ignored several crucial pieces of evidence." (Grandmother's Br. at 37). Grandmother specifically refers to Exhibit B—a psychological evaluation of Mother—which is an exhibit that was <u>not</u> admitted into evidence during the hearing. Accordingly, we will not consider such evidence or argument. *Cochran v. Rodenbarger*, 736 N.E.2d 1279, 1283 (Ind. Ct. App. 2000) (holding that an exhibit not admitted into evidence cannot be considered on appeal).

Grandmother's argument that trial court abused its discretion by appointing Guardian as guardian of Child instead of Grandmother is nothing more than a request to reweigh the evidence, which we will not do. Thus, we affirm the trial court's order appointing Guardian as permanent guardian over Child. *See, e.g.*, *In re Guardianship of A.L.C.*, 902 N.E.2d at 352-53 (affirming the trial court's guardianship appointment and

refusing to reweigh the evidence between the two competing parties seeking to be guardian over a minor).[13]

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.

---

[13] Grandmother argues that Guardian's petition for guardianship was defective under the guardianship statutes and local rules. Grandmother did not object to the nature of Guardian's guardianship petition during the hearing. Thus, she has waived any such argument on appeal.