## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 21 2018, 10:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William M. Horne
Horne Law, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Cody P. Cogswell
Cogswell & Associates, LLC
Fishers, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Valencia A. Jackson,

*Appellant-Respondent,*

v.

Kenneth S. Jackson,

*Appellee-Petitioner.*

August 21, 2018

Court of Appeals Case No.
18A-DR-282

Appeal from the Marion Superior Court

The Honorable James A. Joven, Judge

Trial Court Cause No.
49D13-1108-DR-29314

**Mathias, Judge.**

[1] Valencia A. Jackson[1] ("Mother") appeals the Marion Superior Court's order granting a petition filed by Mother's ex-husband, Kenneth S. Jackson ("Father"), regarding the modification of Father's child support obligation.

[2] Mother appeals and presents six issues for our review, which we consolidate and restate as the following four:

> I. Whether the trial court erred when it imputed income to Mother;
>
> II. Whether Father qualified for a modification of his child support order;
>
> III. Whether Father's bonus income should have been included in the trial court's recalculation of Father's arrearage; and
>
> IV. Whether the trial court erred in its determinations on attorney's fees.

[3] We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

[4] Mother and Father were married in 2003 and had two daughters together—K.J., born in 2005, and V.J., born in 2007 (collectively "the Children"). The parties divorced in 2011, and Mother became the primary physical custodian of the Children. On November 13, 2013, the trial court approved an agreed entry setting Father's child support obligation at $305 per week.[2]

---

[1] Valencia A. Jackson now goes by Valencia A. Maragh.

[2] Father was paying $330 per week, however, $25 of that was toward arrears. It appears from the November 15, 2013 order that Father had previously been paying $110 per week. *See* Appellant's App. p. 49.

[5] In February 2014, Father filed a petition to modify his child support obligation based on a nine-week loss of employment from February 2014 to April 2014. In a February 2015 order, the court denied Father's request to modify his child support obligation because Father regained employment in April 2014, and thereafter, his income did not satisfy the necessary 20% change in support required for modification. Appellant's App. p. 54. But the court did award Father a credit on his arrearage owed to Mother for the nine weeks during which he was unemployed. *Id.*

[6] In April 2014, Father, an electrician, began working for Mister Sparky[3] in Indianapolis, Indiana. As an operations manager, Father's salary in 2017 was approximately $72,488. In addition to his salary, Father receives a yearly bonus that is based on his performance and the business's profitability from the previous year. In April 2017, Father received his 2016 bonus of $17,517.35 in cash plus $5,839.12 in shares.[4] Beginning August 11, 2017, Father also began to receive additional income of $750 per month because he holds a Master Electrician License, which is necessary for Mister Sparky to operate. *See* Tr. p. 43; Ex. Vol., Pet'r Ex. C. Previously, this stipend was paid annually, but the record is unclear as to the amount and consistency of these payments.

---

[3] Mister Sparky is a part of Clockwork Home Services and is a member of the Direct Energy group of companies.

[4] Father will be able to access the share component of the award in two equal payments which will be released two and three years after the award date respectively. Ex. Vol., Pet'r Ex. B. The shares are also contingent on Father's continuous employment. *Id.*

[7] Mother worked the front desk at a doctor's office in Indianapolis, Indiana, where she made $14 an hour. After downsizing, Mother was laid off, and she applied for thirty or forty jobs but received no offers of employment. She then started her own home-cleaning business in February 2017.[5] At some point in 2017, Mother also began working as a home health attendant where she earns $16 per hour, but the hours vary each week.

[8] On March 15, 2017, Father filed a petition to modify child support and parenting time. On August 31, 2017, Father amended this petition to seek modifying child support only. Father asked that parenting time issues be reserved for a later date, and the trial court granted Father's amended petition. Mother filed her answer to Father's amended petition on September 20, 2017, in which she denied Father was entitled to modification, and she requested attorney fees.

[9] The trial court held a hearing on Father's petition on October 24, 2017. During this hearing, the court chastised counsel for failing to accurately file financial declarations and child support worksheets in advance. The court remarked, "neither party showed up prepared today[,]" and set the next hearing for November 28, 2017. Tr. p. 30.

[10] On November 13, 2017, Mother filed a motion in limine seeking to bar Father from introducing testimony about his 2014 income at the November 28 hearing

---

[5] Although Mother indicated that she did not officially start her cleaning business until February 2017, *see* Tr. p. 78, she registered the business with the Secretary of State in July 2016. Ex. Vol., Pet'r Ex. F.

unless he produced his 2014 tax returns to Mother. Father responded to Mother's motion in limine on November 27, in which his counsel asserted that Father's 2014 tax returns "ha[ve] no bearing on his current or future child support order as he made substantially less in 2014" because he was unemployed for several weeks. Appellant's App. p. 179. Counsel also noted that Father "is not requesting for the Court to use the lesser amount." *Id.* As a result, Father characterized Mother's motion as "a bad faith pleading[,]" and he requested attorney fees accrued in responding to the motion. *Id.* at 181–82.

[11]   At the November 28 hearing, both Mother and Father testified and were represented by counsel. On January 10, 2018, the trial court issued its modification order in which it granted Father's request that his child support obligation be reduced to $237 per week.[6] *Id.* at 43. The order also, in relevant part, concluded that: (1) Mother earns, or is capable of earning, a weekly gross income of $586; (2) there are no work-related child care expenses; (3) Father has shown a substantial change in circumstances necessary to make the current order unreasonable, as more than one year has passed since the last modification order, and the amount ordered differs by more than 20%; (4) if Father receives a bonus in the future, he is to pay Mother 14%[7] of the gross

---

[6] Notably, the trial court's order states, "[t]he Court's Child Support Worksheet Obligation is attached and incorporated into this order." Appellant's App. p. 42. However, there is no worksheet attached to the order provided to us.

[7] The 14% resulted from the trial court dividing the amount it calculated as Father's basic child support obligation, $300.58, by the calculated combined income, $2,153. But again, the order provided to us does not contain an attached Child Support Worksheet, and there is no other mention in the record of the amounts $300.58 and $2,153.

amount; (5) Father's total arrears due is $1,412; and (6) because of his flexible work schedule, Father can exercise additional parenting time particularly when Mother is working.[8] *Id.* at 42–44. The trial court also ordered Mother to pay $780 in attorney fees accrued by Father's counsel responding to Mother's motion in limine.[9]

Mother now appeals.

## Standard of Review

Mother contends that the trial court erred in several respects in granting Father's petition to modify child support. In conducting our review, we give considerable deference to the findings of the trial court in family law matters. *Stone v. Stone*, 991 N.E.2d 992, 999 (Ind. Ct. App. 2013), *aff'd on reh'g*, 4 N.E.3d 666 (citing *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005)). "Thus, to the extent credibility or inferences are to be drawn, we give the trial court's conclusions substantial weight. But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible[.]" *MacLafferty*, 829 N.E.2d at 941. And therefore, we will set aside a child support modification order if it is clearly erroneous. *Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind. 2015).

---

[8] The order also incorrectly stated, "Father is ordered to pay the first $1289 of annual uninsured medical expenses[.]" Appellant's App. p. 44. Father filed a motion to correct clerical error, which the trial court granted on January 30 in which it explained that Mother, as the custodial parent, is responsible for the first $1,289 of annual uninsured medical expenses. *Id.* at 46.

[9] The attorney fees were ordered to be paid "directly to Father within 90 days of this order." Appellant's App. p. 44.

Where, as here, the trial court has issued findings of fact and conclusions thereon, we apply a two-tiered standard of review, determining first whether the evidence supports the findings and second whether the findings support the judgment. *Sexton v. Sexton*, 970 N.E.2d 707, 710 (Ind. Ct. App. 2012), *trans. denied*. We will not set aside a trial court's findings unless they are clearly erroneous, meaning that our review of the record leaves us firmly convinced that a mistake has been made. *Id.* We do not defer to the trial court's conclusions of law and will find clear error if the court has applied an incorrect legal standard. *Id.*

## Imputation of Income to Mother

Mother first challenges the trial court's decision to impute income to her. Specifically, Mother asserts that the trial court made its decision without "any evidence that she was voluntarily underemployed[,]"and that the only admissible evidence in the record demonstrated that Mother's weekly income was $414, and not $586 as the trial court concluded in its order. Appellant's Br. at 24. While we will only set aside an order modifying child support if it is clearly erroneous, *Bogner*, 29 N.E.3d at 738, we review a trial court's decision regarding a parent's underemployment and imputation of potential income for an abuse of discretion. *Miller v. Miller*, 72 N.E.3d 952, 955 (Ind. Ct. App. 2017).

The Indiana Child Support Guidelines ("the Guidelines") provide,

> If a court finds a parent is voluntarily unemployed or underemployed without just cause, child support shall be calculated based on a determination of potential income. A

determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community.

Ind. Child Support Guideline 3(A)(3). "Potential income may be determined if a parent has no income, or only means-tested income, and is capable of earning income or capable of earning more." *Id.* cmt 2c. "But the Guidelines do not require or encourage parents to make career decisions based strictly upon the size of potential paychecks, nor do the Guidelines require that parents work to their full economic potential." *Sandlin v. Sandlin*, 972 N.E.2d 371, 375 (Ind. Ct. App. 2012).

[17] We initially note that the trial court did not make a finding on whether or not it found Mother voluntarily underemployed, nor did it specifically state it was imputing potential income on Mother. Rather, the trial court's order merely indicates, "Mother earns, or is capable of earning, a weekly gross income of $586.00[.]" Appellant's App. p. 42. However, the trial court does not explain how it reached this figure, nor is there any admissible evidence in the record indicating this amount. Rather, the figure appears to stem from a discussion between counsel and the trial court at the October 24 hearing.

[18] At the October 24 hearing, Father's counsel asserted that over the previous three years, Mother "has made [] an average of $30,500[.]" Tr. p. 22. Dividing $30,500 by 52 weeks in a year provides a figure of $586.53 in weekly income. However, counsel was not sworn in during this discussion, and there was no

document introduced into evidence establishing the $30,500 figure. We have previously explained that statements of counsel are not evidence. *Krampen v. Krampen*, 997 N.E.2d 73, 81 (Ind. Ct. App. 2013), *trans. denied*. And on appeal we will only consider evidence that has been introduced and properly admitted. *Cochran v. Rodenbarger*, 736 N.E.2d 1279, 1283 (Ind. Ct. App. 2000). Therefore, we will not consider the unsworn statements between counsel and the trial court, nor the presentation of documents that were never properly admitted at the October 24 hearing.

[19] The evidence properly before the trial court does not support a finding that mother is voluntarily underemployed, nor does it support a weekly income for Mother of $586. Mother testified during the November 28 hearing that she was laid off from her previous job because "[t]hey were downsizing."[10] Tr. p. 69. She then applied for thirty to forty positions but did not receive any offers of employment. As a result, Mother decided to start her own home-cleaning business because: (1) she wanted to have more availability for her Children; (2) she wanted to save money on child care; and (3) she believed that she could eventually make more money than she had been earning at her previous job.

[20] Mother also began part-time work as a home healthcare aide in 2017, although the hours varied greatly week to week. And when Father's counsel asked Mother if she was working less hours as a home healthcare aide so that she could focus on her cleaning business, Mother responded, "No." *Id.* at 76–77.

---

[10] The record does not indicate when exactly Mother was laid off.

Mother reported a weekly income of $414 through her testimony, her child support obligation worksheet, and her amended financial declaration form. *See id.* at 73; Appellant's App. pp. 113, 122.

[21] During the hearing, Father introduced a new child support obligation worksheet which attributed a weekly gross income of $640 to Mother. *See* Tr. p. 51; Ex. Vol, Pet'r Ex. E. However, there is no evidence demonstrating how Father reached this amount. And when counsel attempted to elicit testimony from Father relating to Mother's income, an objection was raised and sustained. There was no other testimony or evidence introduced during the hearing pertaining to Mother's income.

[22] Based on the facts and circumstances before us, we conclude that Mother is not voluntarily underemployed, and there is insufficient evidence to support the trial court's decision setting Mother's weekly income at $586. Accordingly, we conclude that the court's decision to assign potential income to Mother was clearly erroneous, and thus, we reverse the court's finding, and remand with instructions to recalculate Mother's income based upon her present earnings.

## Father's Qualification for a Modification of Child Support

[23] Mother next argues that Father's petition to modify child support should be dismissed "because he failed to show that he qualified for a modification[.]" Appellant's Br. at 36. Under Indiana Code section 31-16-8-1, a child support order may be modified:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

*Id.* at (b).

[24] Because we have concluded that the trial court erred when it imputed income to Mother, Father is unable to establish that the $305 that he currently pays in child support differs by more than 20% from the amount he would be ordered to pay applying the child support guidelines.[11] Therefore, Subsection 2(A) is unavailable to Father, and we turn to Subsection (1).

[25] Under Subsection (1), it is Father's burden to establish changed circumstances so substantial and continuous to make the terms of the November 13, 2013, order unreasonable. *MacLafferty*, 829 N.E.2d at 940. Our supreme court has explained that "the determination of whether or not the change in

---

[11] Specifically, a deviation of more than 20% would require a child support order of $244 or less. This amount is calculated by multiplying Father's previous obligation of $305 by 0.2, which equals 61, and then subtracting 61 from 305, which equals 244. And the trial court noted that "even if we impute [Mother's] old income level to her, then [Father] won't get to a 20% difference." Tr. p. 16.

circumstances asserted is 'so substantial and continuing' as to render the prior child support order's terms 'unreasonable' is, at minimum, a mixed question of law and fact." *Id.* at 941. To the extent the trial court's ruling is a question of law, we will review it *de novo. Id.*

[26]     Although not identified in the trial court's order, Father's alleged change in circumstances are that he is now receiving parenting time, and the Children no longer require daycare.[12] We have previously held that the elimination of child care and an increase in parenting time can represent a substantial change in circumstances under Section 31-16-8-1(b)(1). *See, e.g.*, *In re B.J.R.*, 984 N.E.2d 687, 698 (Ind. Ct. App. 2013); *Miller v. Carpenter*, 965 N.E.2d 104, 114–15 (Ind. Ct. App. 2012). Mother does not disagree, as she "concedes that both of these are substantial and continuing changes[.]" Appellant's Br. at 39. But she asserts that "the evidence before the trial court does not show that these changes, when balanced against the parties' relative financial resources, make the current support order unreasonable." Appellant's Br. at 39–40. However, Mother does not support her assertion with any cited authority which is required by Indiana Appellate Rule 46(A)(8)(a). *See Foley v. Mannor*, 844 N.E.2d 494, 496 n.1 (Ind. Ct. App. 2006).

[27]     For these reasons, we conclude that the trial court did not abuse its discretion by modifying Father's child support obligation based on a continuing

---

[12] Specifically, Father notes, "I spend at least 98 annual overnights [with] my children. The current child support worksheet/order does not reflect my annual overnights." Appellant's App. p. 76; *see also* Tr. p. 41. And "[m]y children have not attended before or after school care since 2/4/2017[,]" which Father paid for in compliance with the previous child support order. Appellant's App. p. 76.

substantial change in circumstances that made the original order unreasonable.[13]

## Father's Bonus Income

[28] Mother next argues that the trial court erred because it failed "to account for the $17,517 bonus that Father received when the court made its new order of child support retroactive and credited Father with overpayments of child support towards his arrearage." Appellant's Br. at 41. Specifically, Mother asserts that 14% of Father's bonus income should have been included, and thus, "Father's credits for overpayment needed to be reduced by $2,452.43." *Id.* at 42. Father agrees that 14% of his bonus income should have been included in the new arrearage calculation, but that Mother's calculation is incorrect. Appellee's Br. at 13.

[29] We too agree that a portion of Father's $17,517.35 in bonus income needs to be paid to Mother. However, the 14% ratio that the trial court used may change when the court recalculates Mother's current income. Therefore, we remand with instructions for the trial court to determine the proper ratio, to apply that ratio to Father's $17,517.35 bonus income, and then require Father to pay that amount to Mother as child support.

---

[13] Mother also alleges that "the parent's relative financial positions changed such that a modification in Mother's favor might be appropriate." Appellant's Br. at 40. When the trial court recalculates Father's new support obligation using Mother's current income this may indeed be the case. But this is not the issue currently before us.

# Attorney's Fees

Mother raises two issues with regard to attorney fees. First, she argues that the trial court erred when it ordered her to pay Father $780 in attorney fees accrued by Father's counsel in responding to Mother's motion in limine. Second, Mother contends that the trial court erred when it did not award her attorney fees that she requested in her answer to Father's amended petition for modification. We address each argument in turn.

*A.  Award of Attorney Fees to Father Relating to Mother's Motion in Limine*

Mother filed a motion in limine after the October 24 hearing asking the Court to exclude any testimony regarding Father's 2014 income unless he produced his 2014 tax returns. Father filed a response in which he characterized Mother's motion as a "bad faith pleading[,]" because Mother already had documents specifying Father's 2014 income. Appellant's App. p. 178. Moreover, Father made significantly less in 2014, and he asserted that he "is not requesting for the Court to use the lesser amount." *Id.* at 179. Father concluded by asking for $780 in attorney fees spent in responding to Mother's motion.[14] The trial court in its order modifying child support stated:

> Father incurred attorney fees of at least $780 for responding to
> Mother's Motion in Limine filed on November 10, 2017. Father
> alleges the unnecessary expense of responding to Mother's
> alleged false statements and unfounded request for excluding

---

[14] Father's counsel also submitted an affidavit of attorney's fees indicating the amount incurred. *See* Appellant's App. p. 192.

Father's evidence and testimony. Mother is ordered to pay $780 in attorney fees directly to Father within 90 days of this Order.

*Id.* at 44.

[32] Mother contends that the award of attorney fees to Father should be reversed because "there is no evidence of bad faith." Appellant's Br. at 42. Although the trial court here did not state the basis of its award of attorney fees, it appears to have awarded fees pursuant to our General Recovery Statute, which provides that a trial court may award attorney fees to the prevailing party in any civil action if the court finds that either party:

    (1)    brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

    (2)    continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

    (3)    litigated the action in bad faith.

Ind. Code § 34-52-1-1(b). On appeal, we review a trial court's decision to award attorney fees and the amount for an abuse of discretion. *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 457 (Ind. 2012).[15]

---

[15] Mother correctly points out that when a trial court awards attorney fees, we will "review for clear error any findings of fact and *de novo* any legal conclusions on which the trial court based its decision." *R.L. Turner Corp.*, 963 N.E.2d at 457 (citation omitted). However, the trial court here does not provide any findings of fact or legal conclusions on which it based its decision, *see* Appellant's App. p. 44, and thus, we review the court's decision for an abuse of discretion.

[33] We cannot say that the trial court abused its discretion when it awarded Father's counsel attorney fees incurred responding to Mother's motion in limine. When Mother filed her motion, Father had already provided Mother with a copy of a 2014 W-2 statement indicating the wages he earned after he regained employment in April 2014. Mother contends that the W-2 is misleading and that Father's income for 2014 was substantially higher because "Father had been employed by another company until February 25, 2014." Appellant's Br. at 47. This may be true, however, Father acknowledged he made far less in 2014, and he never requested that the trial court use the lesser amount when calculating his child support obligation.[16] Moreover, Father never submitted to the court a financial declaration form or child support worksheet utilizing his 2014 income, nor did he ever request for the trial court to utilize income averaging. Under these facts and circumstances, the trial court did not abuse its discretion when it awarded Father $780 in attorney fees for responding to Mother's motion in limine.

*B. Mother's Request for Attorney Fees*

[34] In Mother's response to Father's amended petition to modify child support, she requested attorney fees, in part, because her "income is less than 12% of Father's current rate of compensation." Appellant's App. p. 108. Mother's request is based on Indiana Code section 31-16-11-1 which provides the trial

---

[16] Mother's argument here stems primarily from events that took place during the October 24 hearing. *See* Appellant's Br. at 44–48. But as we previously noted, no witnesses were sworn in during this hearing, and the document Mother complains of was never introduced into evidence. Therefore, we will not consider, as evidence, counsel's statements during this hearing nor any exhibits discussed at the hearing, because none were admitted. *See Krampen*, 997 N.E.2d at 81; *Cochran*, 736 N.E.2d at 1283.

court with broad discretion to impose attorney fees on either party to a child support proceeding. "The court may properly consider the respective resources of the parties, their financial earning abilities, and any other factors that bear on the reasonableness of the award." *J.S. v. W.K.*, 62 N.E.3d 1, 9 (Ind. Ct. App. 2016). But the trial court is under no obligation to cite reasons for its determination, nor does it need to explicitly weigh the foregoing factors. *Id.*

[35] Mother argues that because of "the great disparity in incomes and the delays in producing documents," the trial court erred when it did not address her request for attorney fees. Appellant's Br. at 50. We have previously explained that "[w]hile a disparity of income may be considered in awarding attorney fees, a trial court is not required to award fees based on disparity of income alone." *Tompa v. Tompa*, 867 N.E.2d 158, 166 (Ind. Ct. App. 2007). And although Mother asserts that she "believes that much of this litigation directly resulted from Father's delays in producing information about his bonus income, and then about his licensing fee[,]" she does not cite to any authority to support her position. Appellant's Br. at 50. We do not find any misconduct on Father's part, and the trial court is in the best position to make the determination in deciding to award or not award attorney fees under Section 31-16-11-1. *Whited v. Whited*, 859 N.E.2d 657, 665 (Ind. 2007). For these reasons, the trial court did not abuse its discretion when it declined to award Mother attorney fees.

## Conclusion

[36] The judgment of the trial court is affirmed in part, reversed in part, and remanded. We remand with instructions for the trial court to re-calculate

Mother's income based on her current earnings, to calculate a new ratio and award Mother a percentage of Father's $17,517.35 bonus income based on this ratio, and to issue a new modification of child support order.

Riley, J., and May, J., concur.