**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 14 2014, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JILL S. SWOPE**
Sterba & Swope, LLP
Schererville, Indiana

ATTORNEY FOR APPELLEE:

**MARGO R. BABINEAUX**
Meinzer & Babineaux LLC
St. John, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE MARRIAGE OF: | ) |
| | ) |
| ANNETTE M. HUSEMAN, f/k/a | ) |
| ANNETTE M. MANTIS, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| vs. | ) No. 45A04-1307-DR-351 |
| | ) |
| ANGELO N. MANTIS, | ) |
| | ) |
| Appellee. | ) |

APPEAL FROM THE LAKE CIRCUIT COURT
The Honorable George C. Paras, Judge
The Honorable Michael A. Sarafin, Magistrate
Cause No. 45C01-0302-DR-123

**April 14, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Annette Huseman ("Mother") appeals the denial of her motion to correct errors and the trial court's order entered on April 23, 2013. Mother raises two issues which we consolidate and restate as whether the court abused its discretion or erred in denying her motion to correct errors and in entering its April 23, 2013 order. We affirm in part, reverse in part, and remand.

FACTS AND PROCEDURAL HISTORY

Mother and Angelo Mantis ("Father") married and had two children. On February 5, 2004, the parties entered into a Settlement Agreement which contained provisions related to the division of the marital estate and to child support. The parties' marriage was dissolved by a decree of dissolution ("Decree") which incorporated by reference the terms of the Settlement Agreement and which was approved by the trial court and filed on February 17, 2004.

The Settlement Agreement provided that Mother would have physical custody of the children and, under Paragraph 2.A. of Article III ("Paragraph 2.A."), that Father "shall pay to [Mother] the sum of Ninety-two and 34/100 ($92.34) Dollars per week as and for base child support of the parties' minor children." Appellant's Appendix at 16. Additionally, Paragraph 2.B. of Article III of the Settlement Agreement ("Paragraph 2.B.") provided in part:

> [T]he Parties expressly acknowledge that [Father's] employer has moved him from a salaried status to a base salary plus commission pay plan. The child support obligation of [Father] as set forth in the preceding paragraph is premised solely upon [Father's] anticipated 2004 base salary. While [Mother] expressly reserves the right to re-visit [Father's] child support obligation without being subjected to the conditions for support modification as set forth in the Child Support Guidelines, the parties agree that [Father] shall pay to [Mother] [a] monthly sum equal to twenty-seven (27%) percent (basic support of $285.00 ÷ by a combined weekly gross

2

income of $1,073.00 = 27\%$)[1] of his gross monthly earnings in excess of his base weekly salary of Four Hundred ($400.00) Dollars as and for additional support of the parties' minor children. Said additional support is calculated in accordance with the Indiana Child Support Guidelines Commentary to Guideline 3. Documentation of [Father's] monthly gross earnings shall be provided to [Mother] at the time of the payment of the additional support.

Id. at 17. The child support obligation worksheet attached to the Settlement Agreement showed Father's weekly gross income as $400, Mother's weekly gross income as $673, and a recommended support obligation by Father of $92.34. The Settlement Agreement also contained provisions related to the payment of health-related expenses on behalf of the children, the designation of life insurance beneficiaries, and the parties' agreement as to dependency exemptions.

On February 23, 2012, Mother filed a Verified Petition for Rule to Show Cause and for Modification of Support which alleged that Father was required to pay support of $92.34 per week premised upon his base salary plus a monthly sum equal to a percentage of his gross earnings in excess of his base weekly salary of $400, that Father failed to remit timely payments with respect to his base salary and his gross earnings in excess of his base salary, and that Father failed to submit documentation to Mother evidencing his gross earnings. Mother also argued that changes in circumstances warranted a modification of Father's support obligation. On May 3, 2012, Father filed a Petition for Rule to Show Cause alleging that Mother did not permit him to have parenting time at

---

[1] As noted by the trial court in its April 23, 2013 order, at the December 3, 2012 hearing, "Mother conceded that a mathematical error is reflected in the [Settlement] Agreement and that the amount should have been 22.4% and not 27%." Appellant's Appendix at 3. At the hearing, Mother's counsel stated "it appears that the percentage was improperly calculated" and "so I'm prepared to stipulate that rather than the twenty-seven percent that is reflected in the Settlement Agreement, the correct computation should have been point two-two-four [and] my calculations are premised upon twenty-two point four percent . . . rather than twenty-seven percent." Transcript at 13.

3

certain times, that Mother failed to pay the children's uninsured health expenses and that he paid more than his share of those expenses required under the Decree, that Mother failed to comply with those terms of the Decree related to the distribution of the proceeds of the sale of the marital home, and that Mother claimed a dependency exemption in one year in disregard of the court's order.

On December 3, 2012, the court held a hearing at which the parties presented evidence and argument related to Father's arrearage and child support obligation. Mother presented Father's gross income for the years 2004 through 2011 and a calculation of Father's arrearage under Paragraph 2.B. of the Settlement Agreement, which showed that Father's arrearage based upon his gross earnings in excess of his base salary was equal to a total of $47,495.[2] Further, Mother presented Father's child support payment history and submitted a child support worksheet showing Father's weekly gross income to be $1,669.08, her weekly gross income to be $958.85, and a recommended support obligation of $275.98 from Father. Mother also presented evidence showing Father's payments with respect to his weekly support obligation[3] and other purchases made by Father for the children's extracurricular activities and noted that all of Father's payments since 2008 with the exception of one payment in 2011 were non-conforming payments but that she gave Father credit for all of those non-conforming payments. In particular,

---

[2] In her computation, Mother set forth Father's gross income for each year from 2004 to 2011, subtracted his base income of $20,800 in each year (and also subtracted Father's relocation expenses in the year 2011), and multiplied the result by the percentage of 22.4%.

[3] Mother submitted a payment history document showing Father's support payments through the clerk's office (which shows a number of payments for $92.34) and another payment history document showing all of Father's payments including those which were not made through the clerk's office. The document which includes all of Father's payments shows a weekly amount due of $93.24 rather than $92.34 as set forth in the Settlement Agreement.

4

Mother argued that, based upon the support payments made by Father, Father incurred an arrearage of $5,539.27[4] with respect to his support obligation based on his base salary of $400 per week under the Settlement Agreement and that Father made other purchases for the children of $2,298.37. Mother argued that, as a result, Father's total support arrearage consisted of $47,495 for Father's arrearage with respect to his gross income in excess of his base salary for the years 2004 through 2011 plus $5,539.27 for Father's arrearage with respect to his base weekly support during that time period and less a credit of $833 related to a credit card payment which Mother was required but failed to make, for an aggregate arrearage of $52,201.27. Mother requested that Father's child support obligation be set at $275 per week based upon the child support worksheet she submitted. She also submitted her cost for medical, dental, and vision insurance coverage through her employer.

Father by counsel argued that, at the time of the Decree, he was employed by Tones Pressler Company ("TPC"), and that, approximately three months after the entry of the Decree, he received new employment at another company, that Mother knew of his new employment, and that he was unemployed off and on from 2006 through 2009. Father argued he did not believe that he "was supposed to do some sort of calculation and pay additional support," that "[h]e did not understand [the Settlement Agreement] to mean this continues on from job to job to job," and that "to apply it to each and every job thereafter . . . would be unjust." Transcript at 29. Father noted that he took a transfer to California and that his cost of living was substantially higher in California than Indiana.

---

[4] It appears that this amount may have been computed in part using a weekly base support of $93.24 instead of $92.34 as set forth in the Settlement Agreement.

5

He requested that any new support order be gradually phased in so that he could adjust his life accordingly. He testified that he moved to California in October 2011, that he had been recently remarried in November 2011, and that he had a child in December 2011. He presented a child support worksheet showing his weekly gross income to be $1,343.52, Mother's weekly gross income to be $968.31, and a recommended support obligation of Father of $207. The worksheet he submitted included the salary he had earned in Indiana and not the increased salary he was earning in California. In addition, Father's worksheet included a credit for Father for parenting time which was not included on Mother's worksheet and did not include a credit for Mother for health insurance premium payments which was included on Mother's worksheet.

The court asked why Father did not file any motions to modify child support during the previous eight years given that he had a number of job changes, and Father's counsel responded that Father did try to keep up with support, that he was "not thinking a twenty-seven percent factor," that Father "will tell you that [his attorney at the time of the Settlement Agreement] did not explain this to him and he did not understand that it would carry on to each and every employer," and that "the way he read it, it was based upon that employment situation." Id. at 41, 43. The court asked if Father was, in essence, asking it to modify the Settlement Agreement, and Father's counsel replied he did not believe so because the Settlement Agreement expressly discussed "that job that he had," further discussed Mother's "right to revisit, even without waiting the one year," and that "everybody knew at the time his job was up in the air." Id. at 44. Father's counsel also stated that Father had four employers since 2004.

On April 23, 2013, the court entered an Order Upon Hearing Held On December 3, 2012, in which the court noted that, at the hearing, Mother withdrew the aspects of her request seeking to hold Father in contempt and instead requested that the court address only the issues of Father's support arrearage. The court noted that Mother conceded at the hearing that a mathematical error is reflected in the Settlement Agreement and that the amount should have been 22.4% and not 27%. The court found that "having considered the [Settlement] Agreement and the arguments finds that Father's proffered interpretation of the [Settlement] Agreement is the most reasonable construction of [its] provisions upon child support based on Father's irregular income," that "[t]he irregular income provisions of the [Settlement] Agreement were based upon Father's employment at the time that the Parties entered into such agreement and clearly reference what was, at the time, a clear change in Father's compensation structure with his then-current employer," that "[m]oreover, there is no indication in the Agreement that the Irregular income child support provision was intended to apply in perpetuity across all of Father's subsequent employers," and thus that "Father's current child support of $92.34 per week remained in effect since the entry of the [Settlement] Agreement." Appellant's Appendix at 37. The court found that Father's total support arrearage as of the December 3, 2012 hearing was $5,539.27, that the amount should be credited in the amount of $833 for funds that Father paid to satisfy certain marital obligations, and thus that the total arrearage in current support is $4,706.27.

The court further found that the evidence demonstrated a substantial change in circumstances since the entry of the Settlement Agreement such that its terms on child support were no longer reasonable, determined that Father's weekly gross income was

$1,559, determined that Mother's weekly gross income was $958, allocated parenting time credit for Father, found that Mother provided health insurance for the children, and established Father's weekly current child support to be $239. The court ordered that the modification of support be retroactive to December 3, 2012, that Father's total arrearage was $7,639.47, consisting of the arrearage of $4,706.27 and the arrearage due from December 3, 2012 to the date of the order of "$2,933.20 (20 weeks at $146.66 ($239.00-$92.34))," that Father should pay an additional amount of $26 per week until his arrearage was paid in full, and that thus Father's weekly child support obligation was set at $265. Id. at 38. Finally, the court ordered that Father's new support obligation be phased in, that Father pay $150 per week from the date of the order until May 31, 2013, that he pay $200 beginning on June 7, 2013, and that he pay $265 beginning on August 5, 2013.

Mother filed a motion to correct errors arguing that the court erred in failing to enforce the clear and unambiguous terms of the original support order, that "[t]he percentage of additional income portion of the child support Order . . . was based upon potential gross monthly earnings, and did not specify that those earnings had to be commissions or only from the job that Father had at the time," that Father continued to receive commission income, as well as salary and bonus income, from various employment positions he held," and that "[a]s a result, Father's income still fluctuated and was still based upon irregular components of various types." Id. at 43. Mother also argued that the court erred in phasing in the modified support obligation and failing to modify Father's support retroactively to the filing of Mother's February 23, 2012 petition. The court denied Mother's motion to correct errors.

8

DISCUSSION

The issue is whether the trial court abused its discretion or erred in denying her motion to correct errors and in entering its April 23, 2013 order. We generally review rulings on motions to correct error for an abuse of discretion. Ind. Bureau of Motor Vehicles v. Charles, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009); Speedway SuperAmerica, LLC v. Holmes, 885 N.E.2d 1265, 1270 (Ind. 2008), reh'g denied. An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it, or the reasonable inferences drawn therefrom. Lighty v. Lighty, 879 N.E.2d 637, 640 (Ind. Ct. App. 2008), reh'g denied. "We place a 'strong emphasis on trial court discretion in determining child support obligations' and regularly acknowledge 'the principle that child support modifications will not be set aside unless they are clearly erroneous.'" Lea v. Lea, 691 N.E.2d 1214, 1217 (Ind. 1998) (quoting Stultz v. Stultz, 659 N.E.2d 125, 128 (Ind. 1995)). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000), reh'g denied. We give due regard to the trial court's ability to assess the credibility of witnesses. Id. While we defer substantially to findings of fact, we do not do so to conclusions of law. Id. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).

Mother contends that the court erred in modifying the child support obligation agreed upon by the parties in the Settlement Agreement by failing to enforce its clear and

unambiguous terms. Specifically, Mother asserts that the plain language of the Settlement Agreement provided for the method of child support computation at all times, that if the parties had intended that it apply only to Father's job at the time it would have designated such, and that if the parties had intended to later completely eliminate the percentage of earnings in excess of the base weekly salary then they would have provided as such in the agreement. Mother further argues that Father never provided her with documentation of his gross monthly earnings and contends that the court erred in phasing in his newly modified support obligation as he had ample time to adjust to the notion of paying additional child support from the date she filed her petition on February 23, 2012. She also contends that the court erred in modifying support as of the date of the hearing on December 3, 2012 instead of the date she filed her petition.

Father maintains that the court's order should be affirmed and that the court correctly interpreted the Settlement Agreement. He points to the language of Paragraph 2.B. of the Settlement Agreement which states that the support obligation "set forth in the preceding paragraph is premised *solely* upon [his] anticipated 2004 base salary." Appellant's Brief at 9-10 (citing Appellant's Appendix at 17). Father argues that, if the parties had wanted the irregular income provisions to apply in perpetuity across all employers, then they would not have drafted an agreement that repeatedly referred to the fact that the provisions were "expressly" based upon Father's current employment and that the court's conclusion that the provisions were not intended to apply to other employers should be affirmed. Father also argues that the court's decision to phase in his modified support obligation was not an abuse of discretion.

10

In her reply brief, Mother argues that the fact that the agreement was based upon then-current income and employment of the parties does not render any of those agreements modified, partially enforceable or ambiguous when one or both parents changed jobs. She contends that the phrase "premised solely upon Husband's anticipated 2004 base salary" does not equate to an agreement that provides for modification upon a change in job or a change in pay structure, that all child support agreements are presumably based upon the parties' anticipated or current income and employment, and that the mention of Father's anticipated base salary was only to show that the parties did not know "what his future base income might be as it was a new pay arrangement . . . ." Appellant's Reply Brief at 4-5.

In general, a dissolution court "retains jurisdiction to interpret the terms of its decree and decide questions emanating from its decree pertaining to its enforcement." Bandini v. Bandini, 935 N.E.2d 253, 260 (Ind. Ct. App. 2010) (citing Fackler v. Powell, 839 N.E.2d 165, 169 (Ind. 2005)). "Settlement agreements become binding contracts when incorporated into the dissolution decree and are interpreted according to the general rules for contract construction." Id. (citing Bailey v. Mann, 895 N.E.2d 1215, 1217 (Ind. 2008)). Unless the terms of a contract are ambiguous, courts will merely apply the terms, giving them their plain and ordinary meaning, and will not construe the contract or look at extrinsic evidence. Id. (citation omitted). Terms are ambiguous if a reasonable person would find them subject to more than one interpretation, but are not ambiguous merely because the parties disagree concerning their proper interpretation. Id. (citation omitted). "Interpretation of a settlement agreement, as with any other contract, presents a question of law and is reviewed de novo." Id. (citing Bailey, 895 N.E.2d at 1217). One of the

11

purposes of child support is to provide a child with regular and uninterrupted support. Hicks v. Smith, 919 N.E.2d 1169, 1171 (Ind. Ct. App. 2010), trans. denied. "[A] noncustodial parent may not unilaterally reduce proportionately a support order in gross for several children but must make payments of support in the manner, amount and at times required by the support, at least until such order has been set aside." Nill v. Martin, 686 N.E.2d 116, 117 (Ind. 1997) (citations omitted).

The Settlement Agreement, approved by the court and made a part of the Decree, provides that Father would pay child support consisting of two components: (1) a weekly base child support obligation of $92.34 under Paragraph 2.A., premised upon a base weekly salary at the time of $400 per week; and (2) an additional weekly support obligation. With respect to the latter, Paragraph 2.B. of the Settlement Agreement provides that "the parties agree that [Father] shall pay to [Mother] [a] monthly sum equal to twenty-seven (27%) percent[5] . . . of his gross monthly earnings in excess of his base weekly salary of Four Hundred ($400.00) Dollars as and for additional support of the parties' minor children." Appellant's Appendix at 17. The parties do not dispute the manner in which the additional weekly support obligation should have been calculated. Rather, they disagree as to whether Father was required to pay this additional weekly support obligation after his employment with TPC, his employer at the time of the Decree, had ended or terminated.

The plain language of Paragraph 2.B. requires Father to pay additional weekly child support in an amount equal to a fixed percentage of his weekly gross income. Accordingly, in the event that Father's gross income was to increase, his additional

---

[5] As previously noted, Mother concedes the applicable percentage should have been 22.4%.

12

support obligation and thus total support obligation would increase. Similarly, if Father's gross income was to decrease, his additional and total child support obligation would decrease. We note that the language of the clause requires Father to pay a weekly amount of additional support equal to a percentage of his "gross monthly earnings" in excess of $400 and does not expressly or implicitly limit the additional support to a percentage of those earnings based on commissions or other types or forms or earnings. Id. This observation, at a minimum, favors an interpretation of the Settlement Agreement that Father's total support obligation was intended to be based in some manner upon his total income in whatever form or combination of forms the income is earned.

Moreover, although Father argues that the language of Paragraph 2.B. merely sets forth the formula to be used to determine his support while employed for TPC, we cannot agree. The clause does not expressly contain such a limitation. The provision does not state that the additional child support component of his total support obligation would be eliminated or reduced at a future date based upon a change in his employer or a change in the form of his income. We conclude that the plain language of the Settlement Agreement provides that Father's child support obligation is a variable amount, increasing or decreasing depending upon his total gross income. See Cochran v. Rodenbarger, 736 N.E.2d 1279, 1281 (Ind. Ct. App. 2000) (noting that "[t]he plain language of this clause requires Mother to pay child support in an amount equal to 16% of her gross income," that "[a]lthough Mother argues that the language in this clause merely set the formula to determine her child support obligation when it arose initially, we disagree," that "[t]he clause contains no such limitation: it does not provide that Mother will pay 16% of her gross wages from her first full-time job," that "[r]ather, it

13

simply instructs Mother to pay 16% of her gross wages, whatever that amount may be," and that "the plain language of the settlement agreement provides that Mother's child support obligation is a variable amount, going up or down depending upon her income"). This interpretation of Paragraph 2.B. of the Settlement Agreement is consistent with the idea or presumption that Mother and Father intended for Father's support obligation to ensure continuing appropriate support for the children. See Schwartz v. Heeter, 994 N.E.2d 1102, 1106 (Ind. 2013) (interpreting a child support provision in a settlement agreement which provided in part that the parties' respective child support obligation would be recalculated annually based upon the parties' income as reported on their tax returns and noting that "we presume that when parents agree to regularly review their support obligations, it is for the broad purpose of ensuring appropriate support for their children, and not merely to stipulate a particular formula for calculating that support").

With respect to the language in Paragraph 2.B. that "the Parties expressly acknowledge that [Father's] employer has moved him from a salaried status to a base salary plus commission pay plan," Appellant's Appendix at 17, we observe that the language is an acknowledgment of the reason for the parties' agreement to divide Father's total support obligation into two components, namely, that Father's income may be irregular due to his possibly fluctuating income and that the parties desired to take that fact into account. The Indiana Supreme Court and the Indiana Child Support Guidelines encourage parents to innovate in finding ways to account for irregular income and in crafting solutions which promote settlement agreements. See Child Support Guideline 3.A.1. (defining "weekly gross income" to include salaries, wages, commissions, and bonuses); Commentary 2.b. to Child Support Guideline 3.A. (noting that one method of

14

treating irregular income is to require the obligor to make payments of a certain ratio or percentage of the obligor's irregular income and stating that "[j]udges and practitioners should be innovative in finding ways to include income that would have benefited the family had it remained intact"); Schwartz, 994 N.E.2d at 1105-1106 (observing that "[i]rregular income creates an unavoidable tension between the twin goals of a child support determination: (1) giving children the support they need (2) based on ascertainable, dependable income," that "accounting for it has long challenged courts and practitioners," and that "[a]llowing the flexibility to craft innovative solutions promotes settlement agreements, which Indiana law expressly encourages") (citations and internal quotation marks omitted). In addition, the parties' acknowledgment of the form of Father's income at the time of the Settlement Agreement does not suggest that the parties intended that his total support obligation be based on an income amount which did not include his irregular income after his employment with TPC ended.

Further, the language in Paragraph 2.B. that "[t]he child support obligation of [Father] as set forth in the preceding paragraph is premised solely upon [Father's] anticipated 2004 base salary," Appellant's Appendix at 17, is a reference to Paragraph 2.A. of the Settlement Agreement which set forth the component of Father's support obligation based on his base weekly salary. This sentence reiterates that the weekly base child support obligation, set forth in Paragraph 2.A. and premised on a weekly gross income of $400, is one of two components comprising Father's total obligation and that the other component, set forth under Paragraph 2.B. and premised on Father's weekly gross income in excess of $400, is also a part of Father's total support obligation. The statement does not suggest in any way that the additional support amount described in

15

Paragraph 2.B. was not intended to be a component of Father's total support obligation at the time of the Settlement Agreement or at a later time based on Father's employer or form of income. Finally, the language that Mother reserved the right to revisit the issue of child support "without being subjected to the conditions for support modification as set forth in the Child Support Guidelines," Appellant's Appendix at 17, does not suggest that Father's support obligation based on his weekly gross income in excess of $400 was not a part of Father's total support obligation. The clause merely provided that Mother could seek a modification without first satisfying the conditions of the Support Guidelines. See Child Support Guideline 4 ("The provisions of a child support order may be modified only if there is a substantial and continuing change of circumstances."); Commentary to Child Support Guideline 4 ("Before a child support order may be modified in Indiana, it is necessary for a party to demonstrate a substantial and continuing change in circumstances that makes the present order unreasonable or that the amount of support ordered at least twelve (12) months earlier differs from the Guideline amount presently computed by more than twenty percent (20%) . . . .").

We conclude that Father was required to pay the additional weekly support obligation set forth in Paragraph 2.B. as part of his total support obligation after his employment with TPC ended. While the child support order was subject to modification, Father never petitioned the court to modify his support obligation. Accordingly, the trial court erred in calculating Father's total child support arrearage. While the total arrearage should include the arrearage attributable to his weekly base support obligation (found by

16

the trial court to be $5,539.27[6] less a credit of $833 for funds that Father paid to satisfy certain marital obligations), Father's total arrearage should also include the arrearage accrued by Father in failing to make payments under Paragraph 2.B. of the Settlement Agreement. Mother presented evidence of Father's gross income for the years 2004 through 2011 and a calculation of Father's arrearage under Paragraph 2.B. which showed that Father's arrearage based upon his gross earnings in excess of his base salary was $47,495. We reverse the trial court's determination of Father's arrearage and remand to the trial court to make a determination and enter findings as to Father's total support arrearage which includes the arrearages attributable to his base support obligation and to his additional support obligation, and to determine an additional amount Father shall pay weekly toward his total arrearage.[7]

Finally, Mother does not challenge and we do not disturb the trial court's calculation of Father's current weekly support obligation of $239. To the extent Mother argues that the court abused its discretion in phasing in the current support obligation, we note that the Commentary to Ind. Child Support Guideline 4 allows for consideration to be given to phasing in an increase in support if it would result in "a drastic reduction in a parent's standard of living." The trial court found that it was appropriate to phase in Father's modified child support obligation due to the fact that the amount Father would now be paying was an increase of over fifty percent of what he had been paying.

---

[6] As noted above, it appears this amount was computed in part based upon a weekly base support of $93.24 instead of $92.34 as set forth in the Settlement Agreement.

[7] Because we remand for a determination of Father's total arrearage based on the terms of the Settlement Agreement, we need not address any argument by Mother that the trial court's order had the effect of impermissibly modifying the support order retroactively. See Cochran, 736 N.E.2d at 1281 n.1 ("Due to our resolution of this issue, we need not address Mother's contention that the trial court's order had the effect of impermissibly modifying the support order retroactively.").

17

Pursuant to this opinion, Father also now has a significant arrearage to pay. In light of these circumstances, we cannot say that the phase-in schedule set forth in the April 23, 2013 order was improper and we affirm that part of the trial court's order. However, it is unclear as to how much of the amounts ordered to be paid during the phase-in period were to be attributed to Father's arrearage. On remand, after determining the weekly amount Father is to pay toward the arrearage, the court is to determine the amounts to be paid during the phase-in period, and the portion of each such payment attributed to the arrearage.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's order denying Mother's motion to correct errors and the court's April 23, 2013 order related to Father's total arrearage and the additional weekly amount he must pay toward his arrearage, affirm the phase-in schedule of Father's modified support payments, and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BARNES, J., concurs.

ROBB, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE MARRIAGE OF: | ) |
| | ) |
| ANNETTE M. HUSEMAN, f/k/a | ) |
| ANNETTE M. MANTIS, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| vs. | )     No. 45A04-1307-DR-351 |
| | ) |
| ANGELO N. MANTIS, | ) |
| | ) |
| Appellee. | ) |

**ROBB, Judge, dissenting**

The trial court in its order made factual findings, apparently on its own motion. Thus, we should not set aside a specific finding unless it is clearly erroneous, that is, unless there are no facts or inferences to be drawn therefrom which support it. Perkinson v. Perkinson, 989 N.E.2d 758, 761 (Ind. 2013). I believe the trial court's finding interpreting the provision of the parties' Settlement Agreement regarding child support is supported by the facts and by the inferences to be drawn from the agreement itself, and I therefore respectfully dissent from the majority's decision reversing the trial court's order regarding Father's arrearage.

Paragraph 2.B. of the support provision begins, "the parties expressly

19

acknowledge that [Father's] employer has moved him from a salaried status to a base salary plus commission pay plan." Appellant's Appendix at 17. It also specifically references his anticipated 2004 base salary and reserves to Mother the right to revisit support without having to show changed circumstances or wait at least twelve months. See Ind. Code § 31-16-8-1(b). At the hearing on the parties' post-dissolution motions, the child support issues were presented summarily by the parties' attorneys. Father's attorney stated that at the time the Settlement Agreement was entered into in February 2004, both parties knew he was looking for new employment, and he did in fact find new employment within three months. Mother's attorney also acknowledged that the support paragraphs of the Settlement Agreement were crafted "in anticipation that [Father's] employment would change and he would become gainfully employed . . . ." Transcript at 13. It is within this context that the trial court determined the "most reasonable construction" of the support provision is that it was intended to apply only to Father's compensation from his then-current employment. I agree with the trial court.

The majority states that the plain language of Paragraph 2.B requires Father to pay a weekly amount of additional child support and that amount is not expressly or implicitly limited to a percentage of earnings based on commissions or other irregular income. See slip op. at 13-14. I agree that the provision does not limit the additional support to a percentage of a particular kind of income; but I do believe it limits the additional support to a particular source of income—that is, income in excess of his base weekly salary from his then-current job. The majority also states its interpretation of the provision is consistent with the idea that the parties intended to "ensure continuing appropriate support for the children." Id. at 15. However, specifically including an

exception to the normal requirements for modification and allowing Mother to seek revision of the support obligation when circumstances changed—as the parties apparently anticipated was imminent—also serves that purpose under the trial court's interpretation. Moreover, although admirably attempting to deal with a then-uncertain financial situation, the provision—which requires a mathematical formula to be applied monthly, supporting documentation to be provided, and results in a fluctuating child support amount—would be untenable as a long-term solution.

As to Mother's contention that the trial court's interpretation is an improper retroactive modification of the support provision, I disagree. The trial court's order does not modify the provision, it simply applies it as the trial court found it was intended to be applied. That the provision references Father's particular employer and the particular year limits its effectiveness to those particular circumstances and the onus was on Mother to avail herself of the opportunity to revisit child support when those circumstances changed. In short, I believe the trial court's interpretation of Paragraph 2.B is supported by the facts and is not clearly erroneous, and I would affirm the trial court's order in its entirety.