ATTORNEY FOR APPELLANT
Cornelius B. (Neil) Hayes
Fort Wayne, Indiana

Andrea R. Trevino
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
Perry D. Shilts
Fort Wayne, Indiana

_____

# In the
# Indiana Supreme Court



_____

No. 02S03-1301-DR-18

COURTNEY L. SCHWARTZ

*Appellant (Respondent below),*

v.

JODI S. HEETER,

*Appellee (Petitioner below).*

_____

Appeal from the Allen Superior Court, No. 02D07-0807-DR-474
The Honorable Thomas P. Boyer, Judge *Pro Tempore*
The Honorable Lori K. Morgan, Magistrate

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 02A03-1109-DR-401

_____

**September 26, 2013**

**Rush, Justice.**

Irregular income—bonuses, commissions, and the like—can make applying the Child Support Rules and Guidelines challenging. Practitioners and courts have worked to craft suitable solutions, and we certainly encourage parents to negotiate creative agreements that accurately account for irregular income, avoid litigation, and adequately provide for children. Here, in an effort to craft a workable solution, Mother and Father made a seemingly simple agreement: to recalculate their support obligation annually using the Guidelines.

But despite their best-laid plans, their agreement went awry. Its terms are silent about which version of the Guidelines applies. As required by law, this Court has reviewed and amended the Guidelines four times in the last 24 years—most recently in 2010, the year after Mother and Father's agreement was finalized. And the 2010 changes significantly increased support obligations for high-income parents like Father.

We therefore face a question of contract interpretation: Does the Agreement incorporate the version of the Guidelines in effect at the time the Agreement was made, or the one in effect for each particular year's income? The trial court interpreted the Agreement as incorporating the version that applied to a particular year's income, and we agree. Since the Guidelines are regularly amended to fit changing economic conditions, we hold that this Agreement anticipates and incorporates those future changes, because it does not specify otherwise.

**Facts and Procedural History**

Mother and Father married in 1992 and had two children. Both parents are employed, but Father's income is consistently in the high six figures, though the precise amount varies significantly year to year. In early 2009, Mother and Father filed the Agreement with the court, requiring Father to pay a lower base amount of child support than would ordinarily result from his income, plus an annual lump-sum payment to account for his irregular income:

> At the conclusion of each calendar year, starting with 2009, the parties' respective weekly child support obligation shall be adjusted and recalculated by taking the amount of their gross taxable income from their tax return(s) for that year, dividing it by 52 weeks, and using this amount at line 1 of [the Child Support Obligation Worksheet], with all other factors remaining the same . . . .

> The above support and methodology is a compromise by the parties to avoid litigation.

But this annual distribution clause (Distribution Clause) did not specify which version of the Guidelines' Child Support Obligation Worksheet applied, and nothing in the record suggests that either party specifically considered the question during their negotiations.

This lack of specificity became a problem during the second year the Agreement was in force. Effective January 1, 2010, this Court amended the Guidelines, increasing the child support obligation for high-income parents. Ind. Child Support Guideline 1, Commentary (2010). When Father calculated his 2010 Distribution Clause payment (the only year at issue on transfer) using

the 2009 Guidelines, he determined he owed the Children $6,344. Mother did the same calculations using the 2010 Guidelines and determined he owed the Children $44,720.

Mother objected to Father's use of the 2009 Guidelines, and both parents moved for summary judgment. The trial court partially granted and denied each side's motions and found Father should have used the version of the Guidelines in effect during the year he earned the income. That is, he should have used the 2010 Guidelines for the 2010 calculation, though he correctly applied the 2009 Guidelines to his 2009 income. Both parties appealed. A divided panel of the Court of Appeals reversed and found the clause required Father to use the 2009 Guidelines each year. Schwartz v. Heeter, 975 N.E.2d 820, 825–26 (Ind. Ct. App. 2012). Judge Mathias dissented and would have affirmed the trial court. Id. at 830.

We granted transfer to encourage parents to craft agreements to accommodate their financial realities while meeting their children's needs, and to resolve this issue of contract interpretation. We conclude that this Agreement incorporates each year's version of the Guidelines as to that year's income, and therefore affirm the trial court. We summarily affirm the Court of Appeals' decision denying Mother's request for attorney fees. Ind. Appellate Rule 58(A)(2).

**Standard of Review**

We review a trial court's grant or denial of summary judgment *de novo*. Walczak v. Labor Works-Ft. Wayne LLC, 983 N.E.2d 1146, 1151 (Ind. 2013). Also, marital settlement agreements are contracts, Bailey v. Mann, 895 N.E.2d 1215, 1217 (Ind. 2008), and we review questions of contract interpretation *de novo*. Dunn v. Meridian Mut. Ins. Co., 836 N.E.2d 249, 251 (Ind. 2005). Still, a trial court's judgment comes to this court "clothed with a presumption of validity," and "[t]he appellant bears the burden of proving that the trial court erred." Rosi v. Bus. Furniture Corp., 615 N.E.2d 431, 434 (Ind. 1993) (internal quotation marks and citations omitted).

**The Child Support Rules and Guidelines**

The Agreement incorporated the Guidelines, but without specifying which version. The Guidelines' goal is to ensure that children "receive the same proportion of parental income that [they] would have received if the parents lived together." Child Supp. G. 1. On four separate occassions—1993, 1998, 2004, and 2010— this Court has reviewed and amended the Guidelines

because federal law and the Guidelines require a review at least every four years. Family Support Act of 1988 § 103(b), 42 U.S.C. §667(a) (2008); Child Supp. G. 1, Commentary. During a review, the economic data underlying the Guidelines is analyzed to ensure child support award amounts adequately provide for children. Child Supp. G. 1, Commentary. In 2010, that review resulted in a substantial increase in well-off parents' support obligations, and Mother believes that increase should apply to Father's Distribution Clause payments for 2010.

### Irregular Income and the Guidelines

Accounting for irregular income under the Guidelines is a fact-sensitive inquiry within a trial court's discretion. Harris v. Harris, 800 N.E.2d 930, 939 (Ind. Ct. App. 2003). Irregular income creates an "unavoidable tension between the twin goals of a child support determination: (1) giving children the support they need (2) based on ascertainable, dependable income." Sims v. Sims, 770 N.E.2d 860, 865 (Ind. Ct. App. 2002). And accounting for it has long challenged courts and practitioners. Compare, Meredith v. Meredith, 854 N.E.2d 942, 949 (Ind. Ct. App. 2006) (finding trial court erroneously included irregular income), with Railing v. Hawkins, 746 N.E.2d 980, 982–83 (Ind. Ct. App. 2001) (finding trial court erroneously excluded irregular income), and Cavazzi v. Cavazzi, 597 N.E.2d 1289, 1293–94 (Ind. Ct. App. 1992) (finding trial court erred calculating support from irregular income). In light of these challenges, the Commentary to the Guidelines encourages "[j]udges and practitioners [to] innovat[e] in finding ways" to account for irregular income. Child Supp. G. 3(A), Commentary.

Allowing the flexibility to craft innovative solutions promotes settlement agreements, which Indiana law "expressly encourages." Kizziah v. Kizziah, 651 N.E.2d 297, 298 (Ind. Ct. App. 1995). Yet as this case illustrates, that same flexibility also creates the risk of unintended consequences, and underscores the importance of seemingly small details.

### The Distribution Clause

Mother and Father's innovative solution for irregular income was the Distribution Clause. Its basic operation is simple: each year, place the average weekly gross income at line 1 of the Worksheet, leave all other factors the same, credit payments made during the year, and pay any difference as a lump sum. On its face, the clause appears to ensure that the Children receive

4

adequate support based on Father's actual income—the goal of child support. See Sims, 770 N.E.2d at 865. We encourage this kind of simple negotiated solution.

While the clause provided a simple solution to a difficult problem, it did not specify an important detail—which version of the Guidelines Father should use. We agree with the trial court that Father should use the version applicable to a particular year's income for three reasons: (1) the language and structure of the clause leads to this conclusion; (2) the Guidelines must be amended regularly, so not specifying a particular version suggests an intent to apply future amendments; and (3) we presume that when parents agree to regularly review their support obligations, it is for the broad purpose of ensuring appropriate support for their children, and not merely to stipulate a particular formula for calculating that support.

First, the language and structure of the parents' Distribution Clause supports the trial court's conclusion, and we enforce clear and unambiguous contract language as written. Haegert v. Univ. of Evansville, 977 N.E.2d 924, 937 (Ind. 2012). The first part of the clause contains three variable factors: (1) gross income; (2) the tax return forms; and (3) the Worksheet and Guidelines themselves, which are currently on their fifth version. These variable factors are followed by a comma—which we presume was purposefully placed, see Ind. Farmers Mut. Ins. Co. v. Imel, 817 N.E.2d 299, 303–04 (Ind. Ct. App. 2004)—and then the phrase "with all other factors remaining the same." So, the factors before the comma, including each year's Worksheet and Guidelines, vary while the *other* factors remain the same. In his dissent, Judge Mathias came to the same conclusion: "the other 'factors' that will remain the same are the other variables that go into calculating the [payment], not the child support obligation worksheet or formula itself." 975 N.E.2d at 829.

Second, the Agreement is presumed to contemplate the federal-law obligation to review the Guidelines every four years, and thus to incorporate the changes resulting from that review. "[U]nless the contract provides otherwise, all applicable law in force at the time the agreement is made impliedly forms a part of the agreement," because "the parties are presumed to have had the law in mind." Ethyl Corp. v. Forcum-Lannom Assocs., Inc., 433 N.E.2d 1214, 1220 (Ind. Ct. App. 1982). The parties' usual expectation is that their contract will incorporate a snapshot of the law as it then exists, see id.—but that is because most laws do not specifically call for periodic changes. Here, though, the "applicable law" includes the federal Family Support Act of 1988, requiring the

Guidelines to be checked against economic data every four years; and the Guidelines' express recognition of that mandate in the commentary to Guideline 1. If those laws are incorporated by implication, so are the regular changes those very same laws demand.

Third, because children are the beneficiaries of child support, Sickels v. State, 982 N.E.2d 1010, 1013 (Ind. 2013), we presume that parents' most basic purpose in entering a child support agreement is to provide appropriate support for their children. The required quadrennial review has the same purpose, by keeping the Guidelines in step with changing economic conditions. The 2010 Guidelines illustrate that purpose—they concluded, based on review of economic data, that prior versions deviated significantly from "current estimates of child-rearing expenditures" by "level[ing] off the child support schedule for combined weekly adjusted incomes above $4,000." Child Supp. G. 1, Commentary. They therefore significantly increased support obligations on those well-off families, while reducing them for low-earning families. Order Amending Indiana Child Support Rules and Guidelines, No. 94S00-0901-MS-4 (Ind. Sep. 15, 2009) at 20–21 (old formula), 54–84 (new schedule), available at http://www.in.gov/judiciary/files/rule-amends-2009-0909-childsupguidlns.pdf (last visited Sept. 26, 2013). Because the parties did not specify that a particular version of the Guidelines applies, we will presume they meant their annual recalculations to serve the larger purpose of keeping their support obligations commensurate with their incomes and their children's needs. In turn, we further presume the parties intended their obligations to keep pace with periodic amendments to the Guidelines—regardless of whether the amendments increase or decrease their obligations.

Still, the Court of Appeals majority found the parties intended for Father to use the 2009 Guidelines in perpetuity. In coming to this defensible conclusion, the majority determined the 2009 Guidelines and formula were "factors" the Distribution Clause required to stay the same. But in interpreting a contract, we should not look at particular words in isolation. Steiner v. Bank One Ind., N.A., 805 N.E.2d 421, 424–25 (Ind. Ct. App. 2004). The Agreement provides that only the "*other* factors" remain the same. (Emphasis added). We agree the Guidelines are "factors," but that does not resolve whether they are variable or static. So, we respectfully disagree with our colleagues that the definition of the term is dispositive.

Father offers two rationales for affirming the Court of Appeals. First, he argues that generally, the court-approved Worksheet determines a parent's child support obligation, and amend-

ments to the Guidelines do not alter that parent's obligation. But Mother and Father rejected that approach by including the Distribution Clause, so it does not shed light on the meaning of the Agreement. Second, Father argues that he may have offered Mother less in the settlement negotiations had he known the Guidelines could change. But besides his constructive knowledge of those changes as Ethyl Corp. recognizes, his argument overlooks the unique nature of child support—that even though he was negotiating with Mother, she was not the beneficiary of their bargain, and his "offer" was not to her. To the contrary, child support payments are for the benefit of children, Sickels, 982 N.E.2d at 1013—Mother could not bargain them away, Perkinson v. Perkinson, 989 N.E.2d 758, 762 (Ind. 2013), even at Father's urging.

In each regard, Father has failed to persuade us that the trial court's interpretation of the Agreement was incorrect. While settlement agreements are interpreted under the normal rules of contract interpretation, the trial court retains jurisdiction to interpret and enforce its own decree, because it is in "the best position to resolve questions of interpretation." Fackler v. Powell, 839 N.E.2d 165, 167 (Ind. 2005). Furthermore, its grant or denial of summary judgment arrives at this court clothed in a presumption of validity, and Father needed to show it erred. Rosi, 615 N.E.2d at 434. The trial court's interpretation is amply supported by the language and structure of the Agreement and by the controlling law the parties were presumed to have contemplated. Father has only offered his own self-serving interpretation, which does not carry his burden of persuading us that the trial court erred.

## Conclusion

We read the Distribution Clause as requiring Father to calculate each year's child-support obligation by applying the version of the Guidelines applicable to that year's income. The language and structure of the Distribution Clause, the regularly changing nature of the Guidelines, and the basic purpose of those periodic changes and of child support generally, all lead us to that conclusion. We therefore affirm the trial court.

Dickson, C.J. and Rucker, David, and Massa, JJ., concur.