## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 13 2015, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Gloria J. Rahman
Keith P. Rahman
Rahman Law Office
Ferdinand, Indiana

ATTORNEY FOR APPELLEE

Joseph L. Verkamp
Jasper, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Randall J. Herzog,

*Appellant-Respondent,*

v.

Judy K. Herzog,

*Appellee-Petitioner*

February 13, 2015

Court of Appeals Case No.
19A01-1407-DR-318

Appeal from the Dubois Circuit
Court
The Honorable Dean A. Sobecki,
Special Judge
Case No. 19C01-1207-DR-405

**Crone, Judge.**

# Case Summary

[1] Randall J. Herzog ("Husband") appeals the trial court's division of marital assets and amount of his child support obligation stemming from the dissolution of his marriage to Judy K. Herzog ("Wife"). Finding that the trial

court acted within its discretion in determining that Husband failed to overcome the presumption in favor of equal division of marital assets, we affirm on that issue. Finding that the trial court clearly erred in its treatment of Husband's parenting time credit and weekly income for purposes of child support, we reverse and remand on that issue.

## Facts and Procedural History

[2] Husband and Wife were married in October 1997 and had three children during their marriage. In July 2012, Wife filed for dissolution of the marriage.

[3] Husband is an electrician and owns Randy Herzog Electrical ("RHE"), which he operates as a sole proprietorship. At the beginning of the marriage, he netted around $100,000 annually from RHE. After the economic downturn and collapse of the construction market, Husband's tax returns for years 2010, 2011, and 2012 showed a net income from RHE of $5286, $9268, and $13,257 respectively.

[4] Throughout the marriage, Wife worked full time at a cabinet factory and one night per week at a restaurant. Her earnings for tax years 2011 and 2012 totaled $36,525.27 and $42,058.18 respectively.

[5] Before the marriage, in 1994, Husband purchased a thirteen-acre parcel from his parents. Although the initial agreement allowed him to match the highest outside bid of $64,000 by paying half to each of his parents, his father ultimately chose to retain a life estate in the property in lieu of his $32,000 cash share of the proceeds.

[6] In 1998, 3.16 acres of the thirteen-acre parcel were subdivided and retitled in Husband and Wife's name.[1] The parties built a residence on the 3.16-acre parcel ("residential parcel"). The remaining 9.83 acres ("family farm") remained in Husband's name only, and his father lived there until his death. During the early part of his marriage to Wife, Husband made the payments on the family farm. However, at one point, Wife made a lump-sum payment toward the $32,000 obligation. She also made some monthly payments of $264.

[7] During the pendency of the dissolution, the parties shared equal time with the children. As part of the decree, Wife was awarded custody and Husband was awarded parenting time in accordance with the Indiana Parenting Time Guidelines. The parties each submitted child support obligation worksheets. The trial court adopted the figures as laid out in Wife's worksheet, listing Husband's weekly gross income as $1200, giving him a parenting time credit of ninety-five days, and setting his weekly child support obligation at $232. As part of the order distributing the marital property, the trial court divided Husband's family farm equally between the parties.

[8] Husband filed a motion to correct error, citing as error the equal division of his family farm and the calculation of his child support obligation. The trial court

_____

[1] Husband's father released his life estate on the 3.16 acres.

denied his motion to correct error, and he now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

[9] Husband challenges two aspects of the dissolution decree: the distribution of marital property and the calculation of his child support obligation. Where, as here, a trial court issues findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review. *Smith v. Smith*, 938 N.E.2d 857, 860 (Ind. Ct. App. 2010). We determine first whether the evidence supports the findings and then whether the findings support the judgment. *Id*. We neither reweigh evidence nor determine witness credibility and will consider only the evidence favorable to the trial court's judgment. *Id*. We review the findings using a clearly erroneous standard and will reverse only where the record leaves us firmly convinced that a mistake has been made. *Id*. We do not defer to conclusions of law, and as such, we evaluate them de novo. *Id*.

## Section 1 – The trial court did not abuse its discretion in distributing the marital property.

[10] Husband challenges the trial court's decision to divide the marital property equally. Indiana Code Section 31-15-7-5 governs marital property division and reads in pertinent part,

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including

evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse;

(A) before the marriage; or

(B) through inheritance or gift.

[11] Specifically, Husband maintains that the trial court abused its discretion by equally dividing his family farm. He renewed this claim by way of a motion to correct error, which was denied, and we review both denials of motions to correct error and marital property divisions using an abuse of discretion standard. *Wortkoetter v. Wortkoetter*, 971 N.E.2d 685, 687-88 (Ind. Ct. App. 2012). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id*. at 687.

[12] A party challenging the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the statute. *Id*. at 688. In other words, Husband must overcome a strong presumption that the trial court complied with the statutory factors, considered his evidence concerning the title as well as the means and timing of his acquisition of his family farm, and nevertheless concluded that an equal division of the family farm was just and reasonable. *Id*. at 689.

[13] Husband contends that the family farm is individual property and that he rebutted the statutory presumption of its equal division. It is well established that all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage and/or acquired by the single or joint effort of the parties. Ind. Code 31-15-7-4(a); *Smith*, 938 N.E.2d at 860. The one-pot theory ensures that all assets are subject to the trial court's power to divide and award. *Id*.

[14] Here, Husband presented evidence that he acquired the family farm before marriage and retained it in his name individually even after subdividing and retitling the residential parcel to include Wife. He characterizes the transfer from his parents as "quasi-gratuitous," claiming that he paid his parents less than fair market value. Appellant's Br. at 20. He bases this claim on evidence that although initially his parents allowed him to match the highest sealed outside bid of $64,000 for the family farm (paying $32,000 each to his mother and father), his father ultimately decided to accept a life estate in lieu of his $32,000 cash share. Nevertheless, we note that Husband presented no evidence of (1) the value of his father's life estate or (2) donative intent, i.e., that his father intended to make a gift. In contrast, both Husband and Wife testified that Wife contributed to the purchase of the family farm by making periodic payments toward the balance owing to Husband's mother ($264 per month) as

well as a $17,000 lump sum payment following the sale of her vehicle.[2]  *See, e.g.*, Tr. at 161 (Husband's cross-examination testimony concerning Wife's contribution of $264 per month followed by his statement that "hindsight is twenty-twenty," and if he had known it would "come to this," he would have paid it off himself).  Simply put, Wife contributed regularly and significantly to the payments on the family farm.  Thus, title and time of original purchase notwithstanding, we conclude that the trial court acted within its discretion in declining to deviate from the statutory presumption favoring equal division of that asset.

## Section 2 – The trial court clearly erred in calculating Husband's child support obligation.

[15]  Husband also challenges the trial court's calculation of his child support obligation.  A trial court's calculation of child support is presumptively valid, and as such, we will reverse only where the determination is clearly erroneous or contrary to law.  *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008).

## Section 2.1 – The trial court clearly erred in imputing income to Husband.

[16]  Husband specifically contends that the trial court failed to follow Indiana Child Support Guideline 3(A)(2) and -(3) when calculating his income derived from

---

[2]  To the extent that Husband disputes the characterization of the vehicle as solely belonging to Wife, we note that even if the vehicle had been jointly owned by Husband and Wife, Wife's half of the $17,000 proceeds ($8500) from its sale nevertheless would constitute a significant contribution toward the $32,000 obligation.

self-employment for child support purposes. The Guideline reads in pertinent part,

> 2. …. Weekly Gross Income from self-employment [and] operation of a business … is defined as gross receipts minus ordinary and necessary expenses. In general, these types of income and expenses from self-employment or operation of a business *should be carefully reviewed* to restrict the deductions to reasonable out-of-pocket expenditures necessary to produce income. These expenditures may include a reasonable yearly deduction for necessary capital expenditures. Weekly Gross Income from self-employment may differ from a determination of business income for tax purposes.
>
> ….
>
> The self-employed *shall be permitted* to deduct that portion of their FICA payment that exceeds the FICA tax that would be paid by an employee earning the same Weekly Gross Income.
>
> 3. …. *If a court finds a parent is voluntarily unemployed or underemployed without just cause*, child support shall be calculated based on a determination of potential income. *A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community.* If there is no work history and no higher education or vocational training, the facts of the case may indicate that Weekly Gross Income be set at least at the federal minimum wage level.

(Emphases added.)

[17]  Guideline 3(A) requires the trial court to make its determination concerning a parent's underemployment after making preliminary determinations of his employment and earnings potential. In other words, the Guideline clearly anticipates that the trial court will indicate in its findings that it has considered

the evidence presented regarding the parent's work history, occupational qualifications, prevailing job opportunities, and earning levels within his community and issue a conclusion indicating that it considered whether the parent acted without just cause. *See* Ind. Child Supp. G. 3(A), cmt. c(2) (explaining that imputing income based on underemployment is appropriate where underemployment is voluntary and without just cause, meaning that parent is capable but fails or refuses to work).

[18] Although we presume that a trial court knows the law, the trial court's findings are devoid of any language indicating that it considered the factors outlined in Guideline 3(A)(3). Moreover, neither the findings of fact nor the conclusions thereon state that Husband was underemployed without just cause. Instead, the trial court simply adopted verbatim Wife's proposed findings on this issue:

> 8. [Husband] is a self-employed electrician doing business as "Randy Herzog Electrical." His net earnings for the 2011 tax year were $9,268.00 and for the 2012 tax year, $13,257.00 (Resp. Ex. "F" and "G"). [Husband] testified that in the year 2010, his net income from his business was $5,286.00, *although he is capable of earning $40.00 per hour when he works.*
>
> 9. [Wife] contends that child support in the amount of Two Hundred Thirty-two Dollars ($232.00) should be paid weekly by the Respondent based on the Indiana Child Support Guidelines as reflected on her worksheet admitted into evidence (Pet. Ex. "8"). Such calculation is based on her weekly income of $949.00 and $32.24 weekly for health insurance costs. *She has calculated [Husband's] weekly income* to be $1,200 based on $30 per hour and a 40 hour work week.

Appellant's App. at 29 (emphases added); *see also id*. at 22 (Petitioner's proposed findings 11 and 12).

[19] The only indication that the trial court may have deemed Husband to be voluntarily underemployed is its adoption of Husband's testimony that he is "capable of earning $40.00 per hour when he works." *Id*. at 29. This figure is based on Husband's testimony that when he works, he can bill the customer at a rate of $40 per hour. However, Husband also testified that many hours during a typical work week are spent on administrative tasks that are not billable. In other words, when he is on a jobsite performing electrician services for a customer, he can bill that customer at $40 per hour. Below, Wife claimed that the significant decrease in Husband's income from his business is evidence of his voluntary underemployment. The record shows that Husband went from operating a thriving business, netting around $100,000 annually in late 1990s, to netting only $5286 in 2010, $9268 in 2011, and $13,257 in 2012. He explained the negative effects of the economic downturn on his electrical business, especially owing to the collapse of the residential and commercial construction industry. He testified that he had tried to counter the downturn by advertising and joining the Better Business Bureau.

[20] In searching the findings for some indication that the trial court carefully considered the Guideline's factors before imputing potential income to Husband for voluntary underemployment without just cause, we find only the phrase "she has calculated [Husband's] weekly income." *Id*. This indicates

that the trial court simply adopted Mother's figure without making a preliminary determination of voluntary underemployment without just cause.

[21] In this vein, we note that nineteen of the trial court's twenty findings of fact were adopted verbatim from Wife's proposed findings. A trial court's verbatim adoption of a party's proposed findings is not prohibited. *Country Contractors, Inc. v. A Westside Storage of Indianapolis, Inc.*, 4 N.E.3d 677, 694 (Ind. Ct. App. 2014). "Although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous." *Id.*

[22] The majority of the adopted findings are not proper findings; instead, they are merely recitations of testimony and witness opinions. For example, the findings are replete with phrases such as, "Petitioner testified," "Respondent testified," "Petitioner contends," "According to the Petitioner," "According to the Respondent," and "in her opinion." Appellant's App. at 28-31. Findings that indicate that the testimony or evidence was this or that are not findings of fact. *Parks v. Delaware Cnty. Dep't of Child Servs.*, 862 N.E.2d 1275, 1279 (Ind. Ct. App. 2007). Rather, a "finding of fact must indicate, not what someone said is true, but what is determined to be true, for that is the trier of fact's duty." *Id.* (citation omitted). In other words, the "trier of fact must adopt the testimony of the witness before the 'finding' may be considered a finding of fact." *Id.* (citation omitted).

In short, the majority of the findings addressing the contested issues are not findings of fact. The remaining findings are insufficient to establish that Husband was voluntarily underemployed without just cause. As such, we reverse and remand for consideration of the factors in Guideline 3(A)(3) and for proper findings on the question of whether Husband's weekly gross income may be imputed due to underemployment.

## Section 2.2 – The trial court clearly erred in its treatment of Husband's excess FICA tax burden.

Husband also challenges the trial court's treatment of his FICA withholdings in calculating his child support obligation. Guideline 3(A)(2) and its commentary stress the importance of carefully reviewing the business deductions of a self-employed parent. The Guideline states, "The self-employed *shall be permitted* to deduct that portion of their FICA tax payment that exceeds the FICA tax that would be paid by an employee earning the same Weekly Gross Income." *Id*. (emphasis added). The mandatory language of the guideline is clear, and the commentary explains why: the self-employed pay FICA at twice the rate paid by employees, and therefore they are permitted to deduct the excess when calculating their weekly gross income. *Id*. at cmt. 2(a). *See also Truman v. Truman*, 642 N.E.2d 230, 237 (Ind. Ct. App. 1994) (holding that language permitting self-employed parent to deduct half of FICA tax obligation is not flexible but mandatory). The trial court clearly erred in failing to deduct one-half of Husband's FICA tax payment from his income. Consequently, we remand for an adjustment to his weekly gross income.

## Section 2.3 – The trial court clearly erred in calculating Husband's parenting time credit.

Finally, Husband submits that the trial court erred in giving him a parenting time credit for only ninety-five nights. Indiana Child Support Guideline 6 states, "A credit should be awarded for the number of overnights each year that the child(ren) spend with the noncustodial parent."[3] The commentary to Guideline 6 accurately describes Husband and Wife's arrangement here, reading in part, "If the parents are using the Parenting Time Guidelines without extending the weeknight period into an overnight, the noncustodial parent will be exercising approximately 98 overnights." The trial court specifically ordered that Husband's parenting time be "not less than those times set forth in the Indiana Parenting Time Guidelines," Appellant's App. at 32. However, instead of calculating the parenting time credit at ninety-eight nights, the trial court simply adopted Wife's figures, which amounted to a credit of only ninety-five nights. Wife asserts that ninety-five is approximately ninety-eight and that as a result, any error is so minimal as to not constitute clear error. Although a three-

---

[3] In support of her argument that the wording of Child Support Guideline 6 affords the trial court broad discretion over whether to award any parenting time credit, Wife cites *Grant v. Hager*, 868 N.E.2d 801 (Ind. 2007) and *Vandenburgh v. Vandenburgh*, 916 N.E.2d 723 (Ind. Ct. App. 2009). Husband correctly points out that those cases were decided in accordance with the previous version of Guideline 6, which used the term "may," instead of the current version, effective as of January 1, 2010, which has replaced "may" with "should," when referencing the trial court's determination concerning parenting time credit. Our supreme court has emphasized that where the Guidelines have been amended, the trial court and the parties shall use the version applicable during the year for which the obligation is calculated. *Schwartz v. Heeter*, 994 N.E.2d 1102, 1106 (Ind. 2013). "We further presume the parties intended their obligations to keep pace with periodic amendments to the Guidelines—regardless of whether the amendments increase or decrease their obligations." *Id.* at 1107.

night deviation is seemingly minimal when divided out into a weekly difference of $10, the deviation comes to more than $500 annually. We conclude that the trial court clearly erred in adopting Wife's figures amounting to a credit of only ninety-five nights. We reverse and remand for an adjustment of Husband's parenting time credit.

[26] Affirmed in part, reversed in part, and remanded.

Friedlander, J., and Kirsch, J., concur.