## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 13 2020, 9:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY, PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Eric J. Kraus<br>Zionsville, Indiana | Pamela Buchanan<br>Thomas Buchanan<br>Buchanan & Bruggenschmidt, P.C. |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eric J. Kraus,<br>*Appellant-Respondent,*<br><br>v.<br><br>Alexandra Lopez,<br>*Appellee-Petitioner.* | May 13, 2020<br><br>Court of Appeals Case No.<br>19A-DR-2646<br><br>Appeal from the Boone Superior Court<br><br>The Honorable Bruce Petit, Judge<br><br>Trial Court Cause No.<br>06D01-1404-DR-152 |

**Pyle, Judge.**

# Statement of the Case

Eric Kraus ("Father") appeals *pro se*[1] the trial court's order denying his motion for rule to show cause in which Father sought to have Alexandra Lopez ("Mother") pay a percentage of their son's field trip costs. Father contends that the trial court erred by ordering him to pay 100% of his son's field trip costs. Because the parties' relevant settlement agreements clearly provide that Father is responsible for the costs of the parties' children's field trips, we affirm the trial court's order.

We affirm.

# Issue

Whether the trial court erred by ordering Father to pay the cost of his son's field trip.

# Facts

Father and Mother were married in 2003. They have two children, including a son who was born in 2005 and a daughter who was born in 2006. In April 2014, Mother filed a petition for dissolution of their marriage, and Father filed a counter petition.

---

[1] Father, who is an attorney, had counsel below but is representing himself in this appeal.

[4]     On April 5, 2016, Father and Mother entered a settlement agreement ("Settlement Agreement"), which was approved by the trial court. This Settlement Agreement contained the following relevant provisions:

> 15. Child Support. [Father] shall pay $300.00 per week in child support to [Mother]. . . [Father] shall continue as the "controlled expense parent" until further order of the Court or agreement of the parties. As the controlled expense parent, *[Father] will be responsible for* all other controlled expenses, including, but not limited to: (a) education costs (such as school fees, book rentals or purchases, supplies, laboratory fees, school lunches, *field trip costs*, and charges incurred for particular classes such as band, choir or gym), (b) the children's ordinary uninsured healthcare expenses per Indiana's "6% Rule," and (c) personal care costs. . . .
>
> * * * * *
>
> 18. Extra-Curricular Activities. Responsibility for costs incurred in connection with agreed extra-curricular activities will be shared. [Father] shall be responsible to pay 79%, and [Mother] will be responsible to pay 21%.

(App. Vol. 2 at 41, 42-43) (emphasis added). Additionally, the parties included a provision in the Settlement Agreement to explain that each of them "acknowledge[d] that he/she ha[d] ascertained and weighed all of the facts, conditions, and circumstances likely to influence his or her judgment as to the present and future fairness and accuracy of the provisions of th[e] [Settlement] Agreement[.]" (App. Vol. 2 at 34). Father and Mother also stated that "each believe[d] that the arrangement made [we]re fair, equitable and appropriate"

and that they "agree[d] to be bound by the terms of th[e] [Settlement] Agreement." (App. Vol. 2 at 34).

In July 2018, Father filed a motion to modify support. On November 28, 2018, Father and Mother entered an agreed entry ("Agreed Entry"). This Agreed Entry reduced Father's child support by $75.00 per week and also provided, in relevant part, as follows:

> 2. The parties agree as follows:
>
> * * * * *
>
> > B. The *father shall be responsible for* controlled expenses including clothing and shoes (excluding clothes and shoes required for extra-curricular activities) and education costs such as school fees, book rentals or purchases, supplies, laboratory fees, school lunches, *field trip costs* and charges incurred for particular classes such as band, choir or gym;
> >
> > * * * * *
> >
> > E. Extra-curricular activity expenses shall be shared by the father paying 67% and the mother paying 33%[.]

(App. Vol. 2 at 53) (emphasis added). Additionally, the Agreed Entry provided that "[a]ll other provisions in the Settlement Agreement filed on April 5, 2016 not specifically modified shall remain in full force and effect." (App. Vol. 2 at 53).

Between December 2018 and July 2019, Father and Mother both filed numerous motions for rule to show cause. Some of the challenges raised in these motions included parenting time issues, various aspects surrounding

extracurricular activities, and payment of fees for the children's activities. Relevant to this appeal, one of Father's motions provided that he was seeking reimbursement from Mother for her 33% share of extracurricular activities, including sports teams and scouts. Additionally, Father sought a payment from Mother for their son's art class field trip to Chicago. Father asserted that the field trip was an extracurricular activity and that Mother was, therefore, required to pay a 33% share or $219.45. Father attached to his motion a spreadsheet, in which he listed the various costs for which he sought reimbursement from Mother.

[7] On July 11, 2019, the trial court held a hearing on the parties' pending motions. During the hearing, the parties were both represented by counsel. Prior to the hearing, the parties reached a partial agreement regarding some of the pending motions, including the parenting time issues, submission of receipts for extracurricular activities, and Mother's payment of her 33% share of scout fees. During the hearing, the parties' main disagreement involved the parties' responsibility to pay fees for their children's school sport teams and the cost of their son's art class field trip to Chicago. Neither party presented evidence or testimony. The trial court allowed the parties to submit post-hearing briefs to set forth their respective arguments on the payment of the sports and field trip costs. Before ending the hearing, the trial court noted that there was "clearly . . . difficulty with [Father and Mother] communicating and agreeing." (Tr. Vol. 2 at 19). The court instructed them to "not play each other off against the children" when they had disagreements and asked them to "please consider the

children before [they] ma[d]e the next decision on how [they] might treat each other." (Tr. Vol. 2 at 19, 20).

[8] In Father's post-hearing brief, he recognized that he and Mother had not defined the term extracurricular in their Settlement Agreement or Agreed Entry. Father argued that school sports and the field trip should be considered as extracurricular activities and that, under the Settlement Agreement and Agreed Entry, Mother was required to pay her 33% share for those activities. Father asserted that the field trip was extracurricular because it was an "optional, weekend-long art class trip to Chicago[.]" (App. Vol 2 at 79). Father argued that, in the Settlement Agreement and Agreed Entry, he had "agreed to be 100% financially responsible for curricular field trips and 67% financially responsible for extracurricular field trips." (App. Vol 2 at 79).

[9] In her post-hearing brief, Mother argued that Father was required to pay 100% of the cost of their son's field trip because the relevant agreements between the parties made it "crystal clear" that Father would pay for field trip costs. (App. Vol. 2 at 86). Mother also argued that Father should be required to pay 100% of fees for their children's school sports because their teams were "inextricably linked to the school" and were "educational in nature[.]" (App. Vol. 2 at 84).

[10] On October 17, 2019, the trial court issued an order. Because the parties' agreements did not contain a specific provision about the payment for sports and did not define extracurricular activities, the trial court looked to caselaw and the Indiana Child Support Guidelines when determining whether the costs

of sports would be an extracurricular or a controlled educational expense. The trial court determined that the costs of the children's sports were "extracurricular expenses and not controlled educational expenses" and that, pursuant to the Agreed Entry, Father was responsible for 67% of the sport expenses while Mother was responsible for 33%. (App. Vol. 2 at 30). In regard to the costs of the parties' son's field trip, the trial court ruled as follows:

> 8. The Court need look no further than the language contained in Paragraph 15 of the Final Settlement Agreement and restated in Paragraph 2(B) of the Agreed Entry filed November 28, 2018. In both documents, it is unambiguous that Father shall be responsible for "field trip costs." There is no other limiting language concerning the meaning of "field trip." The parties were free to negotiate perimeters for field trip expenses but declined to do so. The Court must take the agreements on their face and as discussed herein, assign the plain meaning of the language used. Absent additional definitions or explanation, simply put, *a field trip is a field trip*. Father is Ordered to pay 100% of the expenses associated with the Chicago field trip and Mother owes no reimbursement for any portion of these expenses.

(App. Vol. 2 at 31) (emphasis added). The trial court also declined the parties' request for attorney fees and ordered each party to be responsible for his/her own fees. Father now appeals.

# Decision

[11] Before we address Father's argument, we note that he filed a motion for an oral argument and a motion to strike Mother's response to his request for an oral argument. In a separate order, we deny both motions.

[12] We now turn to Father's argument that the trial court erred by ordering him to pay 100% of his son's field trip costs. "To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for . . . the . . . support of the children of the parties[.]" IND. CODE § 31-15-2-17(a)(3). When parties in a dissolution action enter a settlement agreement, "the terms of the agreement if approved by the court, shall be incorporated and merged into the decree and the parties shall be ordered to perform the terms[.]" I.C. § 31-15-2-17(b)(1). "Settlement agreements become binding contracts when incorporated into the dissolution decree and are interpreted according to the general rules for contract construction." *Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind. 2008). The terms of the agreement will be given their plain and ordinary meaning unless they are ambiguous. *Id.* "Interpretation of a settlement agreement, as with any other contract, presents a question of law and is reviewed de novo." *Id.*

[13] Here, Father and Mother entered into a Settlement Agreement that the trial court approved and incorporated into the dissolution decree. The parties included a provision that "[a]s the controlled expense parent, [Father] w[ould] be responsible for all other controlled expenses, including, but not limited to . . . education costs . . . such as . . . field trip costs[.]" (App. Vol. 2 at 41). After Father filed a motion to modify child support, Father and Mother entered an Agreed Entry in which they included a provision that "[t]he parties agree[d] [that] . . . [F]ather shall be responsible for controlled expenses including

clothing and shoes (excluding clothes and shoes required for extra-curricular activities) and education costs such as . . . field trip costs[.]" (App. Vol. 2 at 53). The trial court determined that "[i]n both documents, it [wa]s unambiguous that Father shall be responsible for 'field trip costs.'" (App. Vol. 2 at 31).

[14] Father argues that the trial court "disregarded the plain language" of the parties' agreements, and he contends that "[n]othing in the Settlement Agreement and Agreed Entry says that Father is financially responsible for all 'field trip costs.'" (Father's Br. 16, 18). He asserts that, instead, the agreements "when read correctly, mean[] that Father is solely responsible only for those field trip costs that are also a controlled, education cost." (Father's Br. 11). Father describes the nature of his son's field trip as an "optional, weekend-long art class trip to Chicago" and asserts that his son "did not receive academic credit or a grade." (Father's Br. 16). He contends that based on that nature, his son's field trip was not a controlled educational activity for which he was solely financially responsible and that it was instead an extracurricular activity for which he was financially responsible for only 67%. He then seeks to apply caselaw discussing the meaning of "extracurricular" and comments from the Indiana Child Support Guidelines to get to his desired end result that his son's field trip costs were extracurricular expenses and not controlled educational expenses.

[15] We disagree with Father's argument. First, the record before us reveals that Father presented no evidence or testimony to the trial court regarding the nature of his son's field trip. When Father filed his motion to show cause, he

attached a spreadsheet that indicated that the cost of the field trip was $665.00 and that he sought 33% of that cost, or $219.45, from Mother. Nevertheless, we agree with the trial court that we "need look no further" than the language within the parties' Settlement Agreement and Agreed Entry. (App. Vol. 2 at 31). Here, the parties, as allowed under INDIANA CODE § 31-15-2-17(a)(3), chose to enter into these written settlement agreements regarding the support of their children. Indeed, Indiana law "expressly encourages" parties in a dissolution proceeding to enter into settlement agreements as such agreements provide the parties with "the flexibility to craft innovative solutions[.]" *Schwartz v. Heeter*, 994 N.E.2d 1102, 1106 (Ind. 2013) (internal quotation marks and citation omitted). "Yet as this case illustrates, that same flexibility [in allowing parties to enter into settlement agreements] also creates the risk of unintended consequences . . and underscores the importance of seemingly small details." *Id.* When crafting their agreements at issue, Father and Mother included a specific provision that included field trip costs as part of the education costs for which, the parties agreed, Father would bear sole financial responsible. Contrary to Father's argument, there is no language in the agreements that limits his financial responsibility for field trip costs or excludes full payment for field trips that may be optional, on a weekend, or without academic credit. In fact, the parties included such limiting language in their Agreed Entry when they specifically "exclud[ed] clothes and shoes required for extra-curricular activities" from Father's responsibility for clothing and shoe expenses. (App. Vol. 2 at 53). We, as did the trial court, will give plain meaning to the terms of

the parties' agreements. Accordingly, we affirm the trial court's order determining that Father was responsible for 100% of his son's field trip expense.

[16]    Affirmed.[2]


Bradford, C.J., and Baker, J., concur.

---

[2] We note that Mother, in her Appellee's Brief, requested appellate attorney fees pursuant to Indiana Appellate Rule 66(E). Mother asserts that "Father's appeal is meritless, frivolous, harassing, vexatious and has the sole purpose of intimidating Mother and draining her financial resources." (Mother's Br. 13). We decline Mother's request for appellate attorney fees.